George G. Greenburg, Appellee, v. S. D. Childs & Company, Appellant.

Gen. No. 14,350.

1. PRINCIPAL AND AGENT—*what not breach of duty by latter.* An employe of a corporation who purchases the business and materials of a rival concern just prior to the expiration of his term of service for the purpose of entering into business for himself at the end of such term of service, is not guilty of a breach of duty.

2. SALES—*when recovery for, made by agent to principal sustained.* If an agent just prior to the expiration of his term of service purchases material, etc, of a rival concern for the purpose of going into business himself at the end of his term, an agreement to continue his service after the expiration of his contract, in consideration of which the principal is to take over, use and pay for, as its business required, the material so purchased by the agent, is valid, and the market value of such of the materials in question as are used by the principal may be recovered by the agent in an appropriate action.

Assumpsit.    Appeal from the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding.    Heard in this court at the March term, 1908.    Affirmed.    Opinion filed March 22, 1909.

ELMER & COHEN and TODD LUNSFORD, for appellant.

JOSEPH CUMMINS and M. H. CAZIER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The plaintiff, George G. Greenburg, sued the defendant, S. D. Childs & Co., in assumpsit. The declaration consists of the common counts, and the defendant pleaded the general issue. The defendant, at the close of the plaintiff's evidence, and also at the close of all the evidence moved the court to take the case from the jury, but the court denied both said motions and submitted the cause to the jury, who found the issues for the plaintiff and assessed his damages at $2,000, and the court overruled motions by the defendant for a new trial and in arrest of judgment, and rendered judgment on the verdict. The plaintiff had been in the employ of the defendant for about seventeen years prior to January 1, 1904. In December, 1903, and shortly before January 1, 1904, when plaintiff's term of employment would expire, he purchased the stock, business and good-will of T. F. Moore & Co., intending to go into business for himself when his term of employment with the defendant should expire.

T. F. Moore & Co. was a corporation engaged in the same business as the defendant and a competitor of defendant. The plaintiff testified that he paid $5,000 for what he purchased from T. F. Moore & Co., and that shortly after his purchase he had a conversation with J. A. Smith, the defendant's president, which he relates substantially as follows: Smith began the conversation, saying he had learned that I had purchased the Moore business and was going into business for myself, which I said was correct. He said that I had been in defendant's employ a great many years, and he had placed absolute reliance and faith in me, and did not want me to leave, and that, if I would discontinue the Moore & Co. business, with the understanding that none of the assets or anything of Moore

& Co. were to go to any competitor of defendant, defendant would take the materials, dies or machinery I had on hand, just as rapidly as the orders on hand, or other requirements, called for them, and pay me for them.   I said that would be satisfactory to me, and agreed to dismantle the Moore plant immediately, which I did.   Part of the stuff in the Moore plant was conveyed to the manufacturing end of defendant's business, 155 West Jackson street, and the machinery was taken to defendant's new building, 279 East Monroe street.   My salary was increased $500 per year, and I made a new contract with defendant for three years. Nothing was put in writing.   Smith further said that if I would remain with defendant I would become a director in the company, and would be given stock, in consideration of money or other credit.   There was no agreement at that time how much stock I was to have or how much I should pay for it.   A few days later it was held out to me that I would be made a director in the company, and that, when I paid up $3,000, I would be given $10,000 worth of stock in the company.

The plaintiff further testified: The materials taken to defendant's place of business were brass, german silver, copper, bronze and sheet iron, and small stuff, jump rings, slabs and stuff of that kind.   The machinery was taken to the Monroe street plant.   A large number of dies and tools, also completed work and some work partially completed, were taken to defendant's place.   Smith said that defendant would deliver the completed goods and credit them on my account, and as to the uncompleted goods, he would credit me for the material in them, and that such of the dies as orders would require to be used, he would compensate me for their value.

Mr. Jerome A. Smith, defendant's president, called by defendant, testified that he was in his seventy-fifth year, and denied that he ever had any conversation with the plaintiff in reference to taking, using or pay-

ing for any of the Moore stock. He testified that he once had a conversation with the plaintiff, in which he offered to sell him stock, which conversation occurred before anything came up about the Moore matter, and that he never offered to plaintiff $10,000 of stock, at its par value, for $3,000.

L. D. Childs, defendant's treasurer, testified that he was present during part, but not all, of the conversation between plaintiff and Mr. Smith, and did not hear any conversation between them on the subject of taking over the Moore stock.

Whether or not there was such agreement as testified to by the plaintiff, depends mainly on the testimony of the plaintiff and Mr. Smith, and it was for the jury to decide as between them, which evidence was the more credible. That plaintiff purchased the Moore stock, for the purpose of going into business on his own account, that the stock, after the conversation between plaintiff and Mr. Smith, was conveyed to the defendant's premises, as plaintiff testified, and that a considerable part of it was used in filling orders in the defendant's business, the evidence tends to prove and the jury were warranted in believing. The plaintiff was in charge of the metal department of defendant's factory, and orders received by the defendant went to that department, and the plaintiff must have known what parts of the Moore stock were used in filling orders in defendant's business.

That the defendant regarded the plaintiff as trustworthy is evident from the fact that it had retained him in its employ for seventeen years, and that no fault had been found with him on the score of integrity or otherwise is shown by the fact that defendant protested against his quitting its employ, and raised his salary from $2,500 to $3,000 per annum, as an inducement for him to remain with it. Mr. Smith testified that, in his conversation with the plaintiff, he said to him that he had been with defendant for a good many years, that defendant liked him, and that he,

Mr. Smith, was very sorry that he had made up his mind to leave defendant. This was a very great endorsement of the plaintiff as to capability and integrity, to go to the jury. It was a significant circumstance for the consideration of the jury that, immediately after the conversation between plaintiff and Mr. Smith, the plaintiff sent the materials which he had purchased, with the intention of going into business for himself, to the defendant's premises. This, if the agreement between him and Mr. Smith was as plaintiff testified, was the natural thing to do. Mr. Smith testified that he did not know of the removal of the Moore stock to the defendant's factory, but Mr. Duckgeischel, who, Mr. Smith testified, was foreman of manufacturing at the factory, called by defendant, testified that the Moore stock was moved to the factory about January 1, 1904, that parts of it were used in manufacturing articles ordered, and that he gave to the plaintiff memoranda of such parts as were so used.

The evidence in the case is voluminous, occupying over 500 pages of typewriting, and it is impracticable to refer to it specifically in this opinion. Suffice it to say that the evidence is, as we think, after very careful consideration of it, sufficient to sustain the verdict. We will now refer to the contentions of the defendant's counsel.

They contend that the court should have taken the case from the jury, on the ground that plaintiff, as defendant's agent, placed himself in a position in which his interest was such as tended to cause him to be neglectful of his employer's interests; and counsel cite numerous authorities as to the duties, obligations and limitations of an agent, which, as we think, have no application to the facts of the case. The plaintiff purchased the business, stock and good-will of the Moore plant, with the intention of going into business for himself, when his then term of employment with the defendant would expire. This, certainly, he had

a perfect right to do. He did not make the purchase for the defendant, but for himself, to be used in his own business and not in defendant's. Assuming plaintiff's testimony to be true, for the sake of the argument, he disclosed to defendant's president his purchase and his intention in making it, and in the agreement between him and Mr. Smith they stood at arm's length, in respect to what should be done with the property purchased, in the event of plaintiff consenting to Mr. Smith's urgent request that he would remain in defendant's employ for a further term of three years, in which case plaintiff would have no personal use for the property, which consisted of materials, orders, some wholly and some partially completed, and some not yet filled, etc., and Mr. Smith proposed that the defendant would use the property in its business as rapidly as such property should be required in filling orders or otherwise. We are unable to perceive that the plaintiff, in accepting this proposition from the president of his principal, violated in any respect his duty as agent. It is true that the plaintiff was in charge of defendant's metal department, in which such of the purchased property as was used was, but this was by the defendant's authority, and the agreement was that the property would be used as rapidly as would be required by orders, and there is no evidence that it was otherwise used.

Counsel contend that plaintiff's testimony is, that the defendant should have all the purchased property, and that he violated the agreement by selling parts of it to others. The evidence is that plaintiff sold to others than defendant belts, pulleys and machinery, which were not articles which cut any figure in the competition between defendant and other like companies, and there is no evidence that any of the things so sold were required in the defendant's business. Defendant did not agree to take all the Moore property purchased by the plaintiff, but only such as might be required to fill orders, or otherwise in its business.

Plaintiff testified that the understanding between him and Mr. Smith was, that none of the assets of Moore & Co. were to go to any of the competitors of defendant. There is no evidence that any of the articles were sold by plaintiff to any competitor of defendant. It is contended that the agreement testified to by plaintiff was that he was to be paid for the articles used in defendant's business in stock of the company. The plaintiff, after relating in full the agreement made by him with Mr. Smith, testified: ''There was no agreement, at that time, as to how much I should pay for stock, or how much stock I should have. A few days later, in a conversation, it was held out to me that I would be made a director in the company; that, when I paid up $3,000, I would be made a director in the company; that when I had paid up $3,000 I would be given $10,000 worth of stock''. He further testified that the amount due him from defendant, on account of use by defendant of the property, orders, etc., purchased by him from the Moore Co., never amounted to $3,000. Mr. Smith, as we have seen, testified that any talk which he had with the plaintiff, in which he offered to sell him stock, was ''before this Moore matter came up at all.'' In view of the foregoing evidence, we think it plain that a suit by plaintiff against defendant for stock could not be maintained. Plaintiff, however, relies on the following, which occurred in the cross-examination of the plaintiff: ''I expected to ask for the stock, in accordance with the agreement, when the matter had accumulated $3,000. The agreement I had with them was, when I paid them $3,000 I was to receive this stock then.

Q. Well, then they don't owe you anything except stock?

A. Well, you can just put it that way if you wish; I will take the stock.

Q. I want to know, Mr. Greenburg, whether they were to pay you in stock or to pay you in money?

A. They were to pay me in stock.''.

The meaning of this evidence is that plaintiff was to have $10,000 of stock in the defendant company when he should have paid to defendant $3,000, which payment was to consist, as we understand, of credits for the Moore material used by defendant amounting to $3,000, which they never did.

Plaintiff, at the expiration of his three year term of employment, left defendant's service, for no reason shown by the evidence except that his term had expired, taking with him what remained unused of the Moore stock. The agreement of the defendant to use such part of that stock as it might require, was evidently for plaintiff's benefit, and as an inducement for him to remain in defendant's employ.

It is next contended that the case should have been taken from the jury, because there was no proof of the cost of that part of the Moore stock used by defendant. It is argued by counsel that it was not competent to prove the market value of that part of the property used by the defendant, but only what it cost the plaintiff; and inasmuch as the plaintiff purchased the stock, business and good-will of the Moore Co. in bulk and as a whole the cost of any specified part of the property is unascertainable. The argument assumes that plaintiff purchased the Moore property as agent for the defendant, and invokes the law that having so done, he could not make a profit by selling it to the defendant, his principal. We have already shown that plaintiff purchased the property for his own use in business which he intended to establish, after his then term of employment would expire, and not at all as defendant's agent. Strictly speaking, there was no sale by plaintiff to defendant of that part of the Moore property used in the defendant's business, unless the agreement itself can be considered a conditional sale.

The defendant's agreement, according to plaintiff's testimony, was to take the property as rapidly as the orders in hand or other requirements called for it, and to pay plaintiff for it. No price was fixed by the

agreement, and the court properly admitted evidence of its market value.

Defendant's counsel, referring to the abstract of the testimony of the witness Starrett, says that the court allowed evidence of the market value of certain material as if new, whereas it was second-hand. The objection was not made till after the witness had testified as to values, and defendant's counsel moved to strike out all the witness' testimony as to values, which motion the court denied. We do not think the ruling reversible error.

It is objected that the court· ruled out certain questions asked the plaintiff on his cross-examination, as to whom he paid the money for the Moore stock, and how much he paid for the good-will of the business, etc. It would seem sufficient to say that the matter which the questions called for was immaterial; but, subsequently, plaintiff answered that the money was paid at various times, and named several occasions when he paid and persons to whom he paid.

Plaintiff's exhibit 16 is claimed by defendant's counsel to have been erroneously admitted in evidence. The evidence with regard to the exhibit is, that from January 1, 1904, plaintiff made memoranda on slips of paper of goods used from the Moore stock, as they were used, and subsequently the original memoranda were all copied and as they were copied the slips of paper were destroyed, and the memoranda, as copied, all appear on exhibit 16. The exhibit is a statement of the plaintiff's claim. The exhibit was shown to Mr. Smith, when he was on the witness stand, and he admitted in February, 1907, it was handed to him by Mr. L. F. Childs, defendant's treasurer. Mr. Childs testified that, February 15, 1907, a copy of the statement was left with him. The suit was commenced May 20, 1907, and from February 15, 1907, till the former date, no objection seems to have been made to the account by Mr. Smith. A partial inventory of defendant's stock, made in 1904,

and identified by Mr. Childs, defendant's treasurer, partially corroborates exhibit 16.

We do not think the admission in evidence of exhibit 16 warrants a reversal of the judgment. The admission of other exhibits of plaintiff is objected to, in gross. We find no reversible error in the admission of any of them.

The court charged the jury orally. Therefore, the charge was continuous and a unit; yet some one has taken the liberty of dividing the charge in the record into parts and numbering the parts from 1 to 24 inclusive. The charge is also so divided and numbered in the abstract, and defendant's counsel refer to the numbered parts, in their argument, as if they were separate instructions. Reading the charge as a unit, we think it substantially correct, except as to that part of it which refers to sales by an agent and ratification by the principal. As before said, there was, strictly speaking, no sale to defendant of the Moore goods used in its business, and if they were taken and used in accordance with the prior agreement testified to by the plaintiff, there was no necessity for ratification.

We cannot sustain defendant's contention that the damages are excessive. They are $585.75 less than the plaintiff's claim which shows that the jury were not influenced by partiality for the plaintiff. We think the verdict sustained by the evidence, and find no substantial error in the record.

The judgment will be affirmed.

*Affirmed.*