Gertrude Swancutt, Defendant in Error, v. W. M. Trout Auto Livery Company, Plaintiff in Error.

## Gen. No. 17,623.

1. AUTOMOBILES—*when chauffeur is acting within scope of employment.* Where an automobile company does a livery business only and forbids its chauffeurs to "pick up" and solicit passengers, and it appears that such orders are habitually disregarded and that fares from "pick up" passengers are retained by chauffeurs, but if fares are returned to the company they are accepted and a caution given, if a chauffeur picks up a passenger, agrees on the fare and causes an injury through negligent operation, it is for the jury to determine whether he was acting within the scope of his employment.

2. AUTOMOBILES—*when negligence of chauffeur is for the jury.* Where a taxicab going ten miles an hour following a moving street car runs into the car without the emergency brake being used, injuring the taxicab passenger, the question of whether the accident was caused by the negligence of the chauffeur is for the jury.

3. INSTRUCTIONS—*must be construed as a unit.* A portion of an oral charge to a jury which was continuous and a unit may not be prejudicial when the part objected to is read in connection with the whole charge as a unit.

Error to the Municipal Court of Chicago; the HON. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed January 23, 1913. Rehearing denied February 6, 1913.

WALTER J. MILLER, for plaintiff in error.

J. E. INGRAM, for defendant in error; H. J. ROSENBERG, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Gertrude Swancutt, hereinafter called plaintiff, commenced an action of the fourth class in the Municipal Court of Chicago against W. M. Trout Auto Livery Co., a corporation, hereinafter called defendant,

and Owen H. Fay Livery Co., to recover damages for personal injuries which she received, July 11, 1910, while riding in a taxicab owned by defendant, in consequence of the negligence of the driver, a servant of the defendant. The taxicab collided with a street car on Sixty-third street in the city of Chicago. Prior to the trial, which was had before a jury, the suit was dismissed as to the Owen H. Fay Livery Co. The jury found the defendant guilty and assessed plaintiff's damages at eight hundred dollars, upon which verdict the court entered the judgment which by this writ defendant seeks to reverse.

The following facts appeared from the evidence: The defendant was engaged in the automobile livery business and owned and operated about fifteen automobiles including said taxicab. At the time of the accident there was a strike in force by certain drivers of taxicabs, and the city authorities had granted police protection. This consisted in detailing a police officer to accompany a taxicab during its rounds. Henry Gade, a police officer, had been detailed for this duty in connection with the taxicabs owned by defendant. On the evening of the accident, the taxicab in question left the premises of defendant, in response to a call from the Auditorium Annex, and went to that hotel, where two persons got into the cab and were driven, at their request, south on Vernon Avenue to their destination. Charles Webb, an employee of the defendant, was the driver of the taxicab and Gade accompanied him. After the two passengers had paid the driver for their ride and had dismissed the taxicab, it was driven to the "White City," a considerable distance away, to "pick up a load," and upon arriving at the "White City" awaited outside of the entrance for a customer. Other taxicabs were also there awaiting customers. After ten o'clock on that evening, plaintiff, accompanied by a friend, came out of the "White City," and, as it was raining, sought to engage one of the several taxicabs standing at the entrance to con-

vey plaintiff and her friend to plaintiff's home. Plaintiff testified that at the time "there were several taxi-cabs around the entrance but we took the first one. I inquired of the driver what the fare would be * * * and upon receiving a satisfactory answer we engaged the cab and started." The cab so engaged was the cab owned by defendant, on the front seat of which sat Webb, the driver, and Gade, the police officer. While en route to plaintiff's home and while following a moving street car on Sixty-third Street, the cab ran into the rear of the street car, and plaintiff was "thrown forward on her knees" and against the small seats in the front of the cab, and her right leg was cut and she was otherwise bruised and injured. Gade, the police officer, testified that at the time of the collision "we were going about ten miles an hour;" that the driver "did not use the emergency brake;" that "the water leaked out of the water tank;" that after being informed that plaintiff had been hurt, the driver got another cab and "we carried her from the taxi-cab to the other cab—one of us on each side helping her in;" that the driver then tried to run the taxicab and found he could not steer it; that another machine towed the taxicab back to the premises of defendant, where it arrived about two o'clock in the morning and that he (Gade) "rode back in the damaged taxicab, steering it." Plaintiff testified that she did not pay any fare either to Webb or to the driver of the cab that took her home after the accident, and that she was not asked to pay anything after the accident. Both plaintiff and a physician, who attended her at her home on the night of the accident and several times subsequently, testified to the extent of her injuries, and plaintiff testified as to loss and damage occasioned by the injuries.

Two witnesses testified on behalf of the defendant —C. E. Hyman, night clerk of defendant, and W. M. Trout, president of defendant. The driver, Webb, did not testify. Hyman testified that the license number

of the taxicab which Webb drove was 9803; that it was
equipped with a meter; that Webb turned in to Hy-
man the sum of $3.20, which was the amount regis-
tered by the meter as being due for the trip from the
Auditorium Annex; that the meter could be shut off by
the driver so as to cease registering in dollars and
cents but could not be so operated as to prevent its
showing the mileage run; that Webb had been in the
employ of defendant for about two months as a driv-
er of taxicabs; that Hyman had instructed Webb
that "he should not do any picking up—just strictly
livery," but that defendant's drivers did, however,
"pick up" passengers on the streets while out on or
returning from a trip, and that it was unusual for a
driver to make any report thereon, and for the reason
that the driver regarded that "as his own fee." Hy-
man further testified that if a driver, returning from
a trip on which he had been sent, should "pick up"
another passenger and receive money from that pas-
senger and should turn it in to him, he (Hyman)
would accept it for the company, although it was
"against the rules of the company;" that he (Hyman)
had always done so, regardless of the rules, and that
if on this particular "Swancutt trip" the driver,
Webb, had received any money from the plaintiff and
had turned that money in to him, he (Hyman) would
not have refused it, but "would have taken it with a
caution." The president of the defendant company,
W. M. Trout, testified that the company had rules
directing the actions of drivers employed by the com-
pany; that sometimes these rules were in writing and
sometimes they were given orally; that the company
instructed the clerks as to those rules and the clerks,
in turn, instructed the drivers; that the company did
a "hotel business" and had no license authorizing its
cabs to stand upon the street and solicit business on
the street and did not do that kind of a business; that
if a driver should so solicit he would be discharged,

but that if a driver picked up a party on the street and conveyed that party as requested, and was paid, and turned over the money received to the company, the company would accept it.

The main contention of counsel for defendant, relied on for a reversal of the judgment, is that the defendant is not liable for the injuries sustained by plaintiff for the reason that, at the time of the accident, Webb, the driver of the taxicab in which plaintiff was riding, was not acting under the directions of defendant or in furtherance of defendant's business, but on the contrary, after having conveyed the two parties from the Auditorium Annex to their destination, had driven the cab to the "White City" for the purpose of "picking up" a passenger and with the intention "of making a little private money for himself." After an examination of the record in this case we cannot say that such an intention on the part of Webb affirmatively appears. Webb did not turn in any money to defendant for conveying plaintiff in the taxicab, but the testimony shows that plaintiff did not pay him any money for fare. She did not pay him anything upon entering the cab and after the accident was not asked to pay. The fact that other drivers of defendant sometimes "picked up" passengers on the streets and received money which they did not pay over to defendant, does not show that Webb would not have paid to defendant the money received from plaintiff, if no accident had occurred and plaintiff had paid her fare. And the evidence tends to show that if Webb had received money from plaintiff as fare and had paid it over to defendant, the same would not have been refused by defendant. It was for the jury to say, under all the facts and circumstances of the case, whether or not Webb, at the time he committed the negligent acts complained of, which resulted in plaintiff's injuries, was acting within the scope of his employment. The jury evidently believed that he was so acting.

"In determining whether a master is liable for the torts of his servants the most difficult question is whether the particular act or omission of the servant, causing the injury for which the master is sought to be held liable, was committed within the scope of the servant's employment; and this question is in most cases one of fact to be determined by the jury from the surrounding facts and circumstances." 26 Cyc. 1533; Krzikowsky v. Sperring, 107 Ill. App. 493, 497; Chicago Consol. Bottling Co. v. McGinnis, 86 Ill. App. 38, 40; Perlstein v. American Express Co., 177 Mass. 530, 532; Cunningham v. Castle, 127 App. Div. (N. Y.) 580; Mattei v. Gillies, 16 Ont. Law Rep. 558, 562; Cargill v. Duffy, 123 Fed. 721, 734.

"The fact that a servant, while engaged in the business of his master, deviates from the master's instructions does not of itself make the act outside of the scope of the servant's employment so as to absolve the master from liability. Likewise a particular act of a servant may be within the scope of his employment, although it violates the express instructions or orders of the master." 26 Cyc. 1535; Consolidated Ice Machine Co. v. Keifer, 134 Ill. 481, 495; Keedy v. Howe, 72 Ill. 133, 136; Toledo, W. & W. R. Co. v. Harmon, 47 Ill. 298.

It was also for the jury to say whether the accident was caused by the negligence of Webb, the servant of defendant. "The driver of the automobile was bound to use at least reasonable and ordinary care. He was bound to anticipate that he might meet persons or vehicles and to keep a proper lookout for them and use care to have his machine under such control as to enable him to avoid collisions." Johnson v. Coey, 237 Ill. 88, 91.

And we cannot say that under all the facts in evidence the verdict of the jury was excessive.

It is urged that a certain portion of the oral charge given by the court to the jury, to which counsel for defendant objected at the time, was erroneous. Upon

examination of the entire charge, which was continuous and a unit, we cannot say that the giving of the portion objected to, when read in connection with the language which immediately preceded it, constituted prejudicial error. Reading the charge as a unit, we think it was substantially correct. Greenburg v. Childs & Co., 147 Ill. App. 477, 486, aff'd 242 Ill. 110, 115.

The judgment of the Municipal Court is affirmed.

*Affirmed.*