2 Ill. App.3d 158 (1971)
276 N.E.2d 60
ROBERT B. KALNITZ, Plaintiff-Counter Defendant-Appellee,
v.
ION EXCHANGE PRODUCTS, INC., et al., Defendant-Counter Plaintiff-Appellants.
No. 54564.
Illinois Appellate Court  First District.
October 22, 1971.
*159 Shulman, Shulman & Abrams, and Jerome H. Torshen, Ltd., of Chicago, for appellant.
Warren J. Carey, of Chicago, for appellee.
Judgment affirmed.
Mr. JUSTICE LORENZ delivered the opinion of the court:
Kalnitz brought this action for a declaratory judgment seeking a declaration that he was free to compete with Ion Exchange Products, Inc. (hereinafter referred to as Ion), who, by way of counterclaim sought to enjoin such competition. The court found for Kalnitz on all issues raised by the complaint and counterclaim thereby allowing him to lawfully compete with Ion.
The counterclaim filed by Ion was based upon an agreement entered into between the parties in 1960, the trust and confidence reposed in Kalnitz by Ion, the great expenditures incurred by Ion in the development of its customer's relations and the trade secret status of its customer and technical data. Ion has abandoned some of those contentions and in this court contends that the trial judge did not properly apply existing law to the facts of the case. Specifically Ion contends: (1) that its customer lists are entitled to protection because of their confidential nature and the considerable effort and expense which went into their development, and (2) that because Kalnitz held a position of trust and confidence he may not use or disclose confidential information obtained in the pursuit of his employment.
Since Ion, a water treatment service firm, was incorporated, in 1965 Irving Reichstein was its president and general manager. He was also president and general manager of Zerosoft Water Company (hereinafter referred to as Zerosoft), incorporated in 1960, which was dissolved and its assets absorbed by Ion in 1964. At the time of the mutual existence of Ion and Zerosoft the same employees were engaged in the operation of both firms.
In May of 1960 Robert Kalnitz began his employment with Zerosoft, a firm which had only six or seven employees at peak periods. On November 3, 1960, a document was signed by Kalnitz wherein he agreed both to protect the trade secrets of Zerosoft and Ion and not to engage in competitive activity within 150 miles for a period of one year after leaving the employ of those firms. Later that same month Kalnitz was *160 discharged. Although denied by Kalnitz, Reichstein testified that this was not a discharge but only a temporary leave of absence which he suggested to enable the firm to have a smaller payroll in a time of financial difficulty. In early September, 1961 Kalnitz returned to Zerosoft and remained with the firm and its successor, Ion, until March 24, 1969.
Although the firm did have some sales representatives in other parts of the country and did hire some salesmen on a short-term basis, during most of the time Kalnitz was employed by Zerosoft and Ion he was the only salesman. In spite of the fact that he trained new salesmen and signed some letters as "Sales Manager" he did not consider himself to be such and there was some indication that the firm used job titles rather freely in an attempt to enhance its image in the industry. Kalnitz had some power, subject to Reichstein's approval, to employ and discharge sales, office and delivery personnel and he would handle emergency situations which arose during Reichstein's absence. Although Kalnitz held no stock or office in Ion he was authorized to sign checks and, at Reichstein's death, was to inherit 40 percent of the company's stock and become its operating head.
On March 24, 1969, pursuant to information obtained from the company bookkeeper, Reichstein questioned Kalnitz concerning his competitive activities. The evidence is conflicting as to what actually was said at the confrontation but as a result thereof Kalnitz was discharged.
On April 1, 1969, Kalnitz leased business premises and shortly thereafter borrowed $15,000 from his brother to enable him to start his own business, Calco, a firm engaged in the supply and assembly of water demineralization equipment. He intended to and did solicit and sell his firm's services to Ion's customers with whom he had become acquainted while employed by Ion. Those of Ion's customers who began receiving their service from Calco and not Ion did so mainly because Calco provided essentially the same service at a lesser price. It should be noted that most of the major firms in this industry provided essentially the same product made up of components readily available on the open market and utilized technology which is of general knowledge in the trade. The factors which would convince a customer to do business with one firm as opposed to another were quality, service and price.
In the year prior to the initiation of this action Ion acquired 20 to 40 of its 150 accounts. Rather detailed confidential customer records were kept in various forms by Ion and used by personnel in all facets of Ion's business. These records contained such information as the person to contact at the customer's place of business, the price charged that customer for the service and the demineralization requirements of that *161 customer. Although some of these records were not found after Kalnitz left Ion's employ there is no evidence that Kalnitz took them.
The trial judge in refusing to enjoin Kalnitz from soliciting Ion's customers properly employed existing law to the evidence presented.

Opinion
After a consideration of many authorities the court in American Cleaners and Dyers v. Foreman (1929), 252 Ill. App. 122, 134-135 stated that in the absence of an express contract, a taking of a customer list, or fraud, a former employee may not properly be enjoined from soliciting his former employer's customers whom he served during his employment. The court in Revcor, Inc. v. Fame, Inc (1967), 85 Ill. App.2d 350, gave a full statement of the underlying rationale and the limits of the abovestated principle where at page 357 it stated:
"Our free economy is based upon competition. One who works for another cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and the over-all experience which he acquired during the course of his employment. The success of a person who is engaged in sales depends largely upon his personal friendships and the confidences inherent therein. Absent special circumstances, such person cannot be prevented from seeking out customers of his former employer when he has entered into a competing business or gone to work for a competitor.
If a salesman has agreed to a restrictive covenant in his employment contract, or if he has fraudulently and surreptitiously copied or removed lists of customers from a prior employer, or if the names of actual or potential customers are confidential, not subject to memory, are not publicly listed or otherwise readily obtainable, then, under proper circumstances, such salesman might be enjoined from soliciting business from the customers of his prior employer. Absent such circumstances, however, there can be no such prohibition.
 1 In analyzing the record in this case it is readily apparent that there was no restrictive employment contract which was effective to govern the actions of Kalnitz when he left Ion's employ in 1969. The agreement of November 3, 1960, may have been effective to control Kalnitz's activities when he left Ion late that month but it was fully performed by Kalnitz when he conformed his activities to the terms of that agreement during the period in which he was not employed by Ion. Thereafter, the contract had no vitality to control Kalnitz's actions. Additionally, Ion admitted in its brief that the contract is unenforceable to restrict Kalnitz's activities after he left Ion in 1969.
The record also does not support a theory that Kalnitz took the customer *162 lists. Although there is testimony that he took some of the customer data home he said that Reichstein requested such use of the records evidently for business purposes. Kalnitz flatly denied possessing any of Ion's customer data and there is no testimony that he stole or surreptitiously copied Ion's customer data. Ion contends that it makes no difference whether the information is physically copied or memorized. In support of this theory he cites Schulenberg v. Signatrol, Inc. (1965), 33 Ill.2d 379 and Boylston Coal Co. v. Rautenbush (1925), 237 Ill. App. 550. In Schulenburg former employees either surreptitiously traced or memorized blueprints. In Boylston a former employee took the names of 214 of his former employer's agents. In both of those cases there was evidence of a clandestine appropriation, either by copying or by memorization, of confidential business information. The principle of those cases, however, is not effective to make improper Kalnitz's solicitation of Ion's customers with whom he had developed a personal rapport. See Revcor, Inc. v. Fame, Inc. (1967), 85 Ill. App.2d 350, 357; Mid-States Vending Service, Inc. v. Rosen (1966), 77 Ill. App.2d 83, 88.
The record also is barren of any evidence establishing the confidentiality of the customer lists. While some of the customer information was kept secret, various office, sales and delivery personnel, some of which are no longer employed by Ion, had access to the customer's names and addresses. Additionally, there is no evidence that Kalnitz took the confidential customer price information. Ion unsuccessfully attempted to establish that Kalnitz took the customer data by showing that he consistently priced his goods and services lower than Ion's. This is explained, however, by Kalnitz's testimony that price information was readily supplied by the customers themselves and that he remembered some of Ion's prices from his many years of experience selling for Ion.
 2 Ion contends that Kalnitz's position with the firm prevents him from soliciting that firm's customers. Kalnitz's former position with Ion does not, however, prohibit him from soliciting those customers of his former employer with whom he had a personal relationship. Revcor, Inc. v. Fame, Inc. (1967), 85 Ill. App.2d 350, 357; Mid-States Vending Service, Inc. v. Rosen, 77 Ill. App.2d 83, 88; American Cleaners and Dyers v. Foreman (1929), 252 Ill. App. 122, 134-135.
The trial court applied the proper rule of law to the facts of the instant case.
The judgment is affirmed.
Judgment affirmed.
ENGLISH, P.J., and DRUCKER, J., concur.