ELLIS AND ·MARSHALL ASSOCIATES, INC. *et al.*, Plaintiffs-Appellants, *v.* AUSTIN C. MARSHALL, JR., Defendant-Appellee.

(No. 59081;

First District (3rd Division)—December 6, 1973.

*Modified on denial of rehearing January 31, 1974.*

Rudnick, Wolfe, Snyderman & Foreman, of Chicago, for appellants.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, for the appellee.

Mr. JUSTICE McGLOON delivered the modified opinion of the court on denial of petition for rehearing:

This appeal is from an action brought by the plaintiffs for injunctive relief and damages seeking to prevent the defendant, a minority shareholder and former officer, director and employee of the plaintiff corporation, from competing with it for the representation of plaintiff's clients. Prior to a full trial on the complaint, the trial court heard evidence on plaintiffs' motion for preliminary injunction. At the close of the plaintiffs' evidence the trial court denied the preliminary injunction when it granted the defendant's motion for a finding in his favor.

In this interlocutory appeal, the plaintiffs contend they were improperly denied the relief sought because the evidence proved that the defendant, now actively engaged in a competing business, began his new enterprise by breaching his fiduciary duty to the plaintiff corporation in that he solicited certain clients and employees of the plaintiffs while he was still an officer, director and employee of the plaintiff corporation. The defendant responds that the trial court was correct in finding that plaintiffs' evidence does not show any reason to enjoin the defendant's post-employment activities.

We affirm.

The plaintiff corporation, Ellis and Marshall Associates, Inc. (hereinafter Ellis and Marshall) was engaged in business as the manufacturer's representative for ten toy companies. Plaintiff, Henry Ellis, owns 30% of the stock of Ellis and Marshall; plaintiff Laura Ellis, owns 30%, plaintiff, Robert Magers, own 5%; and defendant Austin Marshall, owns 35% of the stock.

For some ten years prior to February, 1973, the defendant and Henry Ellis had been associated together, first as partners in a similar business, and then as the two principal officers and directors of the plaintiff corporation. In 1973 the plaintiff corporation employed other individuals as salesmen. It is also apparent from the record that sometime prior to

February, 1973, Mr. Ellis and Mr. Marshall had some serious disagreement as to how the business should be run, eventually culminating in Mr. Marshall's resignation from the corporation and the formation of a competing business.

The pertinent facts surrounding the defendant's termination of employment with the plaintiff corporation, and which the plaintiffs contend support their prayer for an injunction, are as follows. In February, 1973, Henry Ellis and the defendant were in New York City to attend a trade show commonly known as "Toy Fair". The defendant testified that on the 26th of that month there was a conversation between the two in which the defendant told Ellis that he resigned as an officer, director and employee of the plaintiff corporation. Mr. Ellis testified that the defendant merely said he was "thinking of leaving". Ellis further testified that the two had a further conversation regarding their business on March 2, 1973, at which time the defendant said, "We're together". The defendant denied making this statement.

In any event, both Ellis and the defendant agree that as of March 9, 1973, the defendant was no longer an officer, director or employee of the corporation. Ellis testified that on that date he informed all the toy manufacturers which the corporation represented that the defendant had left the business.

Mr. Thomas G. Murtaugh testified that he was the president of Rotadyne, Inc. a toy manufacturer that was represented by Ellis and Marshall. On February 17, 1973, he was in New York City at "Toy Fair" and had a conversation with the defendant. At that time the defendant told him he was planning to leave Ellis and Marshall in order to form a new company to carry on the same type of business and would very much like to represent Rotadyne, Inc., but was not pressing him for an answer. Murtaugh further testified that within four days he had another conversation with the defendant in which the defendant stated that he was definitely leaving the business and that two salesmen from Ellis and Marshall would be joining him in his new business. On cross-examination the witness testified that, as of the date of the hearing Ellis and Marshall was still the manufacturer's representative of Rotadyne.

Mr. Steven Siegert testified through the introduction of his evidence deposition that he also attended the "Toy Fair" in New York as a representative of Wonder Products Co., a toy manufacturer represented by Ellis and Marshall. On February 22, 1973 he had a conversation with the defendant in which the defendant told him he was leaving Ellis and Marshall and forming a new company. The defendant also told Siegert that he would like to talk to Wonder Products at some later date about becoming their manufacturer's representative. On cross-examination it

was brought out that as of the date of the deposition, March 29, 1973, Ellis and Marshall was still the representative of Wonder Products.

Fritz Carlson testified that he was an employee of Ellis and Marshall and he also attended the "Toy Fair" trade show from February 14 to March 3 in that capacity. On February 15, 1973, in New York, he and the defendant had a conversation in which the defendant said he was "possibly" going to form a new company in the manufacturer's representative business and would be interested in knowing whether Carlson would leave Ellis and Marshall and join him as a partner in the new business. However, at the time of the hearing Carlson had not left the employ of the plaintiff corporation.

Steven Magers testified that he was an exemployee of Ellis and Marshall presently employed by Marshall Associates, Inc., the company that the defendant set up when he left the plaintiff's employ. Magers testified that the first time he talked to the defendant about leaving Ellis and Marshall and joining his new business was on March 10, 1973. Magers resigned from his position at Ellis and Marshall on March 11, during a phone conversation with Henry Ellis. Magers also stated that at the time of the hearing he was representing Munro Games for Marshall Associates, Inc. Munro Games is a toy manufacturer, and formerly one of the ten manufacturers that was represented by Ellis and Marshall, however, Magers testified that he had not begun to represent Munro for Marshall Associates, Inc. until April 10, 1973.

John Kazmer also testified that he was an exemployee of Ellis and Marshall presently working as a salesman for Marshall Associates, Inc. Kazmer stated that sometime during the week of February 26, while in New York at "Toy Fair" and employed by Ellis and Marshall, he had a conversation with the defendant in which the defendant told him that he had resigned from Ellis and Marshall and wanted the witness to join him in a new business he was about to start. Kazmer resigned from Ellis and Marshall on March 9, 1973 and immediately thereafter began his employment with the defendant.

Further evidence adduced during the hearing showed that on March 12, 1973 the defendant caused Articles of Incorporation to be filed creating Marshall Associates, Inc. Marshall also testified that only on March 12, 1973, did he begin calling on clients in his new capacity. Marshall admitted that some of the clients on which he called included some toy manufacturers then represented by Ellis and Marshall.

In denying the plaintiffs' prayer for a temporary injunction which would have prohibited the defendant from soliciting the ten toy manufacturers originally represented by Ellis and Marshall, the trial judge delivered an opinion in which he found that the evidence was not suf-

ficient to warrant the relief sought. The trial judge found that there was no evidence of a covenant not to compete which restricted Marshall's activities as an exemployee but rather that the plaintiffs' attempt to enjoin the defendant's competition was based on the theory that there were certain fiduciary duties imposed on the defendant by reason of his former position as an officer, director and employee of the plaintiff corporation. The judge then stated that he found no case that indicated that an officer, director or employee has a fiduciary duty with reference to actions performed subsequent to his service with the corporation. The trial judge further concluded that the defendant's discussions with the plaintiff's employees and clients during the "Toy Fair" show in February indicated that he was speaking only of his future plans and as such, this was not inconsistent with or contrary to the position he then occupied with the plaintiff. For these reasons the temporary injunction was denied.

The findings of a trial judge will not be disturbed unless they are contrary to the manifest weight of the evidence. (*Kenny Construction Co. v. Metropolitan Sanitary Dist.* (1971), 52 Ill.2d 187, 288 N.E.2d 1.) After a thorough review of the record we are convinced that the trial judge's finding that the defendant did not violate his fiduciary duty to the plaintiffs prior to his resignation, and was not prohibited from competing with the plaintiff after his resignation are not contrary to the manifest weight of the evidence.

The testimony of the various witnesses presented by the plaintiffs as to the defendant's conversations and activities during February while at "Toy Fair" were aptly characterized by the trial judge as statements as to the defendant's future plans. The defendant's statements that he "very much wanted to represent" Rotadyne, but was not pressing for an immediate answer, and that he would like to further discuss the relationship of his newly formed group and Wonder Products were not, as the plaintiffs suggest, "solicitations of business for himself" that some courts have held to be prohibited by reason of a party's employment. Further, it is unfair to characterize the defendant's conversations with Carlson and Kazmer as attempts to entice away or pirate the plaintiff's employees.

The facts presented by the plaintiffs in the instant case lead us to a conclusion similar to that reached by the court in *James C. Wilborn & Sons, Inc. v. Heniff* (1968), 95 Ill.App.2d 155, 237 N.E.2d 781, wherein the court said:

> "A review of the evidence indicates that the defendants merely exercised their right to leave one employment and form or join a rival business. Thus, this case is distinguishable from those

cited by the plaintiff. The latter involve either the appropriation of a bona fide trade secret (e.g., Schulenburg v. Signatrol, Inc., supra) or a proven plot to destroy another's business (Duane Jones Co. v. Burke, 306 NY 172, 117 N.E.2d 237 (1954)). The defendant, Heniff, did not violate his duty of loyalty to Wilborn by forming Brandex and purchasing machinery for it while working for Wilborn. It is not necessarily a breach of duty for an agent to form a rival concern and purchase machinery for it while working for his principal (see e.g., Greenburg v. S. D. Childs & Co., 147 Ill.App. 477 (1909)), though it would be for an agent to continue to work for his principal after a rival corporation which he also served as agent begins business." 95 Ill.App.2d 163.

As in *Wilborn, supra,* the plaintiffs here contend that the facts in the instant case are similar to those in *Duane Jones Co., Inc. v. Burke* (1954), 306 N.Y. 172, 177 N.E.2d 237, wherein the court found that the evidence warranted a finding that defendant employees had breached their fiduciary duties to the plaintiff by conspiring while in its employment to form a new agency and take with it accounts held by the plaintiff. However, we cannot agree because the facts in that case conclusively demonstrate a clear breach of the defendants' fiduciary duty to their employer that did not occur in the instant case.

In *Jones* the defendants, some two months prior to the formation of the new competing business, met together and decided to approach the clients that they were assigned to handle on behalf of their employer-plaintiff, seeking from these clients a favorable reaction to their plan to either buy out Duane Jones' interest in the plaintiff company or form a new competing business. There is no suggestion that the defendant in the instant case ever requested the reaction of Wonder Products or Rotadyne to his plan to form a new business, but merely informed them of his intention to do so. Further, in *Jones* there was testimony that the plaintiff's clients had been "pre-sold" on the defendants' plan by the time that plan was presented to their employer. There was no suggestion that this had occurred in the instant case. Beyond this evidence that the *Jones* defendants had conspired to pre-sell the plaintiff's clients there was also evidence that at least one of the defendants was working for the plaintiff at the same time he was the secretary of the competing corporation. In the instant case there was no demonstrable business activity on the part of the defendant or his newly formed corporation until March 9, 1973, a date even the plaintiffs admit was the defendant's last date of employment with the plaintiff corporation.

■■ The difference between *Jones* and the instant case are apparent. In *Jones* the court found a breach of the defendants' fiduciary duty to

their employer when, as employees, they conspired to obtain a commitment from their employer's clients to support their plan to either buy out the plaintiff's interest in the corporation or form a new corporation to which these clients would transfer their business. The facts in the instant case, although similar in some respects, lack the proof that the defendant did more than inform certain clients of his intention to leave the plaintiff's employ. The defendant here did not ask the plaintiff's clients to approve his plan or even attempt at that time to persuade them to employ him in his new capacity. The defendant's conduct prior to his resignation falls short of that which the *Jones* court found to be violative of an employee's fiduciary duty to his employer.

■■ In regard to the defendant's competition after his resignation from the plaintiff corporation the general rule in Illinois has been recently restated in *Kalnitz v. Ion Exchange Products, Inc.* (1971), 2 Ill.App.3d 158, 276 N.E.2d 60, wherein the court said:

"After a consideration of many authorities the court in *American Cleaners and Dyers v. Foreman* (1929), 252 Ill.App. 122, 134-135 stated that in the absence of an express contract, a taking of a customer list, or fraud, a former employee may not properly be enjoined from soliciting his former employer's customers whom he served during his employment. The court in *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill.App.2d 350, gave a full statement of the underlying rationale and the limits of the above stated principle where at page 357 it stated:

'Our free economy is based upon competition. One who works for another cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and the over-all experience which he acquired during the course of his employment. The success of a person who is engaged in sales depends largely upon his personal friendships and the confidences inherent therein. Absent special circumstances, such person cannot be prevented, from seeking out customers of his former employer when he has entered into a competing business or gone to work for a competitor.

If a salesman has agreed to a restrictive covenant in his employment contract, or if he has fraudulently and surreptitiously copied or removed lists of customers from a prior employer or if the names of actual or potential customers are confidential, not subject to memory, are not publicly listed or otherwise readily obtainable, then, under proper circumstances, such salesman might be enjoined from soliciting business from the customers of his

prior employer. Absent such circumstances, however, there can be no such prohibition.'" 2 Ill.App.3d 161.

■■ In view of the fact that there is no covenant not to compete, nor a taking of a customer list or trade secret the defendant's conduct since March 9, 1973 is not enjoinable. The plaintiffs' contention that the defendant's post-resignation conduct is enjoinable because it is merely a continuation of prior enjoinable conduct is not well grounded in view of the fact that we have held above that the defendant's prior conduct was not a breach of his fiduciary duty to the plaintiff corporation. The interlocutory appeal in this case was from an order of the trial court denying the plaintiffs' motion for a preliminary injunction. With the case presented to us in this posture we hold that on the basis of the evidence adduced during the hearing on plaintiffs' motion there was a failure to demonstrate a breach of the defendant's fiduciary duty so as to warrant the injunctive relief sought. In this light, our decision cannot be construed to preclude the plaintiffs from pursuing other remedies, provided they adduce the required proof of their allegations.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.