CAPSONIC GROUP, INC., Plaintiff-Appellee, *v.* PLAS-MET CORPORATION *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 76-815, 76-1032 cons.

Opinion filed February 22, 1977.

Carol A. Kipperman and Charles W. Deuser, II, both of Wilson & McIlvaine, of Chicago, for appellants.

Hill, Gross, Simpson, Van Santen, Steadman, Chiara and Simpson, of Chicago (Lewis T. Steadman, William J. Morris, and Joseph N. Stella, of counsel), for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, Capsonic Group, Inc., filed a suit in the circuit court of Cook County against defendants, Plas-Met Corporation, Richard J. Balaguer, John L. Kelly, and Raymond H. Hilgers, seeking to enjoin defendants from competing with Capsonic. After a full evidentiary hearing covering three specified combination metal and plastic items, a preliminary injunction was entered against defendants halting the production of these three products. Defendants appeal, arguing that plaintiff failed to meet its burden of proof in establishing the criteria for granting a preliminary injunction.

Order vacated and cause remanded.

The record discloses the following pertinent facts, briefly summarized herein. Capsonic Group, Inc., was engaged in the business of designing and engineering molds to be used to produce metal and plastic parts. The individual defendants, Balaguer, Kelly and Hilgers, were employed by Capsonic in various positions of responsibility. On December 22, 1975, the individual defendants resigned their positions with Capsonic. On December 29, 1975, the Illinois Secretary of State issued a certificate of incorporation to Plas-Met Corporation. Thereupon, Balaguer, Kelly and Hilgers operated Plas-Met Corporation in direct competition with Capsonic. Plas-Met was a successful competitor and did business with some of Capsonic's customers. Capsonic sought an injunction to prevent alleged irreparable injury to its business operations.

In *Ellis & Marshall Associates, Inc. v. Marshall* (1973), 16 Ill. App. 3d 398, 306 N.E.2d 712, we reiterated the general rule that in the absence of a covenant not to compete, the taking of a customer list, the taking of a trade secret, or fraud, a former employee may not properly be enjoined from competing with his former employer.

Defendants note that there was no covenant not to compete. Rather, during their course of employment, defendants Balaguer and Kelly entered into a profit sharing agreement with Capsonic which contained the following clauses:

"As and for consideration for the above agreement, the employee agrees that following his termination of employment with the corporation for whatever reason, the employee will not accept employment with a competitor of the corporation for a period of three years following that termination, without repaying all payments made under this agreement.

A competitor, for the purpose of this clause shall be described and

defined as a company that directly competes with Capsonic and where the employment of the employee directly results in the loss of sales or profits to Capsonic. A competitor will also include any company that currently has accounts with Capsonic where the hiring of this employee causes the loss of any or all of those accounts."

Notwithstanding these arguments, Capsonic sought an injunction.

■■ In order for a preliminary injunction to properly issue, the petitioner must establish a likelihood of ultimate success on the merits of the case (*Kable Printing Co. v. Mount Morris Book-binders Union Local 65—B* (1976), 63 Ill. 2d 514, 349 N.E.2d 36), and that there is a need to preserve the status quo to prevent an irreparable injury for which there is no adequate remedy at law. (*Armour and Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.) In showing a likelihood of success on the merits, however,

"* * * a party is not required to make out a case which will in all events warrant relief at the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, * * *." (*Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1013, 326 N.E.2d 180, 185.)

The precise issue is whether plaintiff has raised a fair question as to the existence of its right to enjoin defendants Balaguer and Kelly from competing with plaintiff.

■■ Defendants argue that the language of the profit sharing agreement demonstrates that Capsonic was interested only in recapturing profit sharing should an employee leave its employment, and that such a recapture was the intended exclusive remedy in such a case. We agree with defendants. By entering into the above quoted agreement with two of the three individual defendants prior to their departure, Capsonic impliedly agreed that these individuals were free to later compete with Capsonic, subject only to the repayment provision. Having thus determined its rights under the agreement, Capsonic may not later assert a right to enjoin its former employees from engaging it in competition. In our opinion, plaintiff has not shown the existence of a right to enjoin defendants Balaguer and Kelly.

■■ The record does not indicate that defendant Hilgers signed the abovementioned profit sharing agreement. Prior to his resignation in December 1975, Raymond H. Hilgers was plaintiff's chief design engineer. Plaintiff contends that Hilgers, by nature of his intimate knowledge of plaintiff's manufacturing techniques, processes, and know-how, was a fiduciary of the plaintiff corporation in possession of confidential information. The use of this confidential information on behalf of Plas-Met, plaintiff argues, constitutes a breach of the

confidential, fiduciary relationship. This argument is consistent with the general rule that a former employee may be enjoined from using his former employer's trade secrets. The issue in this regard is whether defendant Hilgers was the holder of a "trade secret," as such term is legally understood.

As stated in *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 385, 212 N.E.2d 865, *cert. denied*, 383 U.S. 959:

> "The controlling definition of a trade secret in Illinois is supplied by *Victor Chemical Works v. Iliff*, 299 Ill. 532, 540, where this court said that it is a secret *plan* or process, tool, mechanism or compound known only to its owner and those of his employees to whom it is necessary to confide it."

The opinion in *Victor Chemical* recites some of the considerations which may lead to a finding of a trade secret:

> "Complainant has proved that it exercised great caution in protecting at its plant what it terms its trade secret. It built high walls and fences to keep out all individuals who might become interested in knowing how it manufactured its product. It employed watchmen and instructed all of its foremen to exclude all persons from the premises who might be of that inquiring nature, and its general rules were that no one should be admitted to its plant or grounds unless he had a pass expressly given by the company for admission. Its chemists and Iliff were under contract not to disclose its supposed secrets." (299 Ill. 532, 547.)

There are cases which have held that a trade secret was not proven where the plaintiff did not show that it treated its know-how as confidential. In *U.S. Plywood Corp. v. General Plywood Corp.* (6th Cir. 1966), 370 F.2d 500, 508, *cert. denied*, 389 U.S. 820:

> "Additionally, we note that this record does not support a finding of breach of a confidential disclosure. This record discloses no effort at maintaining secrecy of the process in General Plywood's plant. Its employees were not even warned against disclosure. * * * it neither made any effort at maintaining secrecy of its process nor at securing an agreement for confidentiality."

Similarly, in *McGraw-Edison Co. v. Central Transformer Corp.* (8th Cir. 1962), 308 F.2d 70, 74:

> "The determination of non-existence of a trade secret was made from a consideration of the facts establishing that the subject of appellant's apparatus patent had progressed beyond experimental use before August 2, 1951 and that appellant did not at any time treat or consider its 'know-how' or method of production in respect thereto as 'confidential' either before its employees or visitors to its plant. Absent proof of a trade secret there could be no 'confidential

relationship' between appellant and its former employees under appellant's theory of claim as made here."

Plaintiff contends that its know-how was not generally known and that the information in Hilgers' possession was confidential, yet such a conclusion is not supported by the record. The evidence shows that plaintiff never treated such information as confidential or restricted. There were no guards at the unrestricted plant, and passes were not required to enter the premises. The engineering drawings were not marked as secret or kept under lock and key. Persons taken on tours of the plant were never told that they were viewing a confidential process. Hilgers testified that he was never told that his work was secret. We believe and hold that plaintiff failed to prove that the information in Hilgers' possession was confidential and held as a trade secret. Accordingly, defendant Hilgers should not have been enjoined since plaintiff failed to demonstrate the existence of a trade secret improperly used by Hilgers and Plas-Met. We reach the same conclusions as to defendant John L. Kelly, a director of plaintiff corporation, and also to defendant Richard J. Balaguer who had been employed by plaintiff only since July 1975 in connection with marketing activities.

For the abovementioned reasons, the preliminary injunction issued by the circuit court of Cook County is vacated and the cause is remanded for further proceedings.

Order vacated; cause remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.