UNICHEM CORPORATION, Plaintiff-Appellee, v. WILLIAM W. GURTLER *et al.*, Defendants-Appellants.

First District (4th Division) No. 85—519

Opinion filed September 25, 1986.—Rehearing denied October 30, 1986.

Scariano, Kula & Ellch, Chartered, of Chicago Heights (Robert H. Ellch and John M. Izzo, of counsel), for appellants.

Epton, Mullin & Druth, Ltd., of Chicago (George J. Schaller, Randall E. Server, and Bradley W. Jacks, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Unichem Corporation (Unichem), instituted this action seeking both injunctive relief and monetary relief from William Gurtler, a former president and director of Unichem, and Gurtler Chemicals, Inc., a corporation William Gurtler established after he resigned from Unichem. In its two-count amended complaint, Unichem alleges: (1) that Gurtler breached the fiduciary duty he owed to Unichem; and (2) that Gurtler Chemicals violated the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*).

After various depositions were taken, Unichem moved for summary judgment claiming that, as a matter of law, Gurtler breached the fiduciary duty he owed to Unichem and that, as a matter of law, Gurtler Chemicals violated the Uniform Deceptive Trade Practices Act. Following a hearing on the matter, the trial court granted Unichem's summary judgment motion. In granting Unichem's motion, the trial court permanently enjoined Gurtler Chemicals from selling any product with a label deceptively similar to Unichem's and, in addition, ordered an accounting to determine the profits made by Gurtler Chemicals at Unichem's expense. At the conclusion of the accounting hearings, the trial court entered judgment in favor of Unichem in the amount of $47,964.80. In addition, the court granted Unichem $1,150.50 in attorney fees arising from Gurtler Chemicals' failure to comply with one of the trial court's orders.

On appeal, Gurtler contends that material issues of fact still exist and that, as a result, the trial court erred in finding that he breached his fiduciary duty as a matter of law. Gurtler Chemicals, on the other hand, asserts: (1) that material issues of fact still exist as to whether it violated the Uniform Deceptive Trade Practices Act and that summary judgment was therefore improper; (2) that even if it did violate the Act, an accounting was an improper remedy; and (3) that the trial

court erred in awarding attorney fees to Unichem.

We affirm the decision of the trial court.

BACKGROUND

Plaintiff Unichem is an Illinois corporation in the business of producing and selling chemical laundry products. Defendant Gurtler was the president and a member of Unichem's board of directors until he resigned from his positions on March 12, 1982. Greg B. Gurtler (G.B. Gurtler) is Gurtler's son and was a salesman with Unichem until he resigned on January 1, 1982. Defendant Gurtler Chemicals is in the same line of business as Unichem and was incorporated, with Gurtler and G.B. Gurtler as two of its officers, on March 23, 1982.

The record reveals that during 1981 Gurtler was president of Unichem and his son, G.B. Gurtler, was Unichem's sole salesman in the Ohio region. In November of 1981 Gurtler contacted his cousin, Lester C. Gurtler, the plant manager at Unichem. Gurtler informed Lester that he was going to leave Unichem soon and encouraged Lester to leave Unichem also. Lester agreed.

During the month of December 1981 Gurtler learned that his son was also going to leave Unichem in the near future. Gurtler further learned that G.B. Gurtler was looking for a building to house a new business which he intended to open after he left Unichem. The new business would produce the same type of goods as that manufactured by Unichem and would compete with Unichem for the same customer base. On December 30, 1981, G.B. Gurtler, on behalf of "Gurtler Chemicals of Illinois" entered into a lease for a warehouse. On January 1, 1982, G.B. Gurtler resigned from Unichem. Although Gurtler was aware that his son was establishing a rival business, he failed to inform any of Unichem's other officers as to those developments.

After January 1, 1982, Gurtler personally approved five separate sales of Unichem goods to G.B. Gurtler. The sales occurred on January 6, 14, 21, 22 and 28, 1982. These sales to G.B. Gurtler were at a price substantially lower than the normal price that Unichem charged its customers. In fact, the price charged to G.B. Gurtler barely covered the cost of producing the material and provided Unichem with only marginal profit. In addition, the sales were made on credit to G.B. Gurtler, who possessed no credit history. Although Gurtler was aware that G.B. Gurtler was obtaining Unichem products for the sole purpose of reselling the goods to Unichem customers (with the profits going to Gurtler Chemicals), Gurtler failed to inform Unichem's other officers of G.B. Gurtler's purchases.

When G.B. Gurtler resigned from Unichem on January 1, 1982,

Gurtler did not attempt to notify Unichem's other officers until he sent a memo describing G.B. Gurtler's resignation. While the memo was dated January 25, 1982, the other officers at Unichem did not receive the memo until early March.

On February 9, 1982, Gurtler contacted the First National Bank of Dolton for the purpose of obtaining, and guaranteeing, a $100,000 loan. The proceeds of the loan were not for Gurtler himself, but were instead to be disbursed to G.B. Gurtler. Gurtler used his own residence as collateral for the loan and discussed with the loan officer the type of business that G.B. Gurtler was going in to. Subsequently, on April 9, 1982, the loan was granted and the proceeds deposited into the account of Gurtler Chemicals. Gurtler never disclosed to Unichem's other officers that he was attempting to obtain a loan for the rival business established by his son.

During February of 1982 Gurtler became aware that his wife and G.B. Gurtler were soliciting Unichem employees in an attempt to encourage those employees to leave Unichem and join Gurtler Chemicals. In addition, Gurtler knew that his wife had taken several of Unichem's labels and was using those labels to make Gurtler Chemicals' labels. The Gurtler Chemicals' labels created by Gurtler's wife were duplicates of Unichem's labels. (See section II.) Moreover, Gurtler admitted that he provided "technical input" to his wife while she was developing the labels for Gurtler Chemicals. Gurtler did not inform any of Unichem's other officers as to these developments.

On Friday, March 12, 1982, Gurtler resigned from his position as president and director of Unichem. On Monday, March 15, 1982, Gurtler assumed the position of president and director of Gurtler Chemicals, thereby joining his son and wife in their endeavor. In addition, on that Monday, eight of Unichem's other employees failed to report to work at Unichem and instead became immediately employed with Gurtler Chemicals.

On March 18, 1982, Unichem filed a complaint alleging that Gurtler had breached his fiduciary duty. Subsequently, on April 21, 1982, Unichem amended its complaint to include a count against Gurtler Chemicals alleging that Gurtler Chemicals had violated the Uniform Deceptive Trade Practices Act. On April 27, 1982, the circuit court of Cook County entered an agreed order whereby Gurtler Chemicals was: (1) restrained from selling any product that had a Unichem label on it; (2) restrained from selling any product with the same or similar name as that used by Unichem; and (3) compelled to execute certain UCC financing and security agreements to protect Gurtler Chemicals' assets should a judgment in favor of Unichem be

rendered.

Unichem moved for summary judgment on June 8, 1982. Unichem claimed that the evidence before the trial court was sufficient to establish that Gurtler breached his fiduciary duty as a matter of law. In addition, Unichem asserted that the uncontradicted evidence demonstrated that Gurtler Chemicals violated the Uniform Deceptive Trade Practices Act as a matter of law.

On September 8, 1982, the trial court agreed with Unichem and entered its summary judgment with regard to both the fiduciary-duty count and the count alleging Gurtler Chemicals' violation of the Uniform Deceptive Trade Practices Act. Soon thereafter, on November 9, 1982, the trial court ordered an accounting. In addition, the trial court awarded Unichem $1,050.50 in attorney fees stemming from Gurtler Chemicals' failure to comply with the trial court's April 27, 1982, order. The attorney fees were granted because Gurtler Chemicals had failed to execute, pursuant to the trial court's order, certain UCC financing and security agreements.

The trial court conducted approximately 25 hearings regarding the accounting. Finally, nearly two years later, the court awarded Unichem $47,964.80. The trial court arrived at this figure through the following analysis: First, the trial court ascertained the total amount of sales that Gurtler Chemicals received at the expense of Unichem (80% of Gurtler Chemicals' sales were to former Unichem customers). That figure amounted to $172,072.40. Second, the trial court determined, pursuant to Gurtler Chemicals' admission, that the total cost of those goods amounts to $141,342.33. Third, based on the evidence presented by the parties, the trial court found that Unichem would have incurred $8,500 in operating expenses had they sold the goods themselves. The trial court then took the gross-sales figure ($172,072.40), and subtracted from it the cost of the goods sold ($141,342.33) and the operating expenses ($8,500) to arrive at the award of $47,964.80. The trial court entered judgment in favor of Unichem in that amount as well as in the amount of $1,150.50 for the attorney fees awarded.

Gurtler and Gurtler Chemicals now bring this appeal.

Opinion

I

We first address Gurtler's claims that the evidence before the trial court was insufficient to establish that he breached his fiduciary duty as a matter of law. Gurtler claims that his actions were actually in the

best interests of Unichem and that, as a result, a question of fact still exists which thereby precludes the trial court from awarding summary judgment in favor of Unichem.

■ Summary judgment should be granted only if the pleadings, affidavits, and depositions on file reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 452 N.E.2d 649.

■ Under Illinois law, a fiduciary relationship exists between a corporation and the officers of that corporation. (*Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 308 N.E.2d 313.) As fiduciaries, corporate officers owe an obligation to act with good faith and loyalty and cannot enhance their own personal interests at the expense of the corporation's interests. (*Coduti v. Hellwig* (1984), 127 Ill. App. 3d 279, 469 N.E.2d 220.) A corporate officer must disavow any opportunity which would permit his private interests to clash with those of his corporation. (*Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 337 N.E.2d 471.) In addition, as a fiduciary, the corporate officer owes, at the very minimum, an obligation to deal honestly and fairly with his corporation. *Lebold v. Inland Steel Co.* (7th Cir. 1942), 125 F.2d 369.

■ In the case at bar, we agree with the trial court that the evidence presented was sufficient to establish that Gurtler breached his fiduciary duty as a matter of law. The record reveals that while Gurtler remained president and director of Unichem, he: (1) encouraged Lester Gurtler, one of Unichem's employees, to leave Unichem and join a rival business which Gurtler himself was going to join in the near future; (2) sold Unichem products at a reduced price to his son, G.B. Gurtler, knowing that G.B. Gurtler was going to resell the products to Unichem's regular customers; (3) obtained a $100,000 loan for a business he knew would compete with Unichem by placing his personal residence up as collateral; (4) provided "technical input" to his wife and thereby assisted her in copying Unichem's label so that Gurtler Chemicals' label would mirror Unichem's; (5) failed to inform Unichem's other officers that G.B. Gurtler had resigned and established a rival business until nearly a month after the fact; and (6) failed to inform Unichem's other officers that his wife and son were actively soliciting Unichem employees in an attempt to have them leave Unichem and join Gurtler Chemicals.

We believe that with this evidence before it, the trial court could properly find that Gurtler breached the fiduciary duty he owed to Unichem. It is obvious that the conduct set forth above is contrary to the

duties of good faith, loyalty, and honesty that a fiduciary owes. Indeed, at the very minimum, a corporate officer must deal honestly with his corporation and must thereby disclose those facts which he is aware of that threaten the corporation's existence. In the case at bar, the record reveals that Gurtler not only failed to disclose such facts, but instead, intentionally hid developments (such as his attempt to obtain a loan for Gurtler Chemicals and his wife's copying of Unichem's labels) which were clearly harmful to Unichem. Accordingly, we agree with the trial court that Gurtler breached his fiduciary duty as a matter of law.

Gurtler persists in arguing, however, that his actions were "in the best interests of Unichem prior to his resignation." Gurtler asserts that his sales to G.B. Gurtler "guaranteed revenues to Unichem" and that as a result, his conduct should be applauded as a sound business decision. We disagree.

While it is true that the sales to G.B. Gurtler guaranteed revenues to Unichem, the fact is that those "revenues" barely covered the cost of producing the goods and included no recognizable profit to Unichem. Moreover, the sales were to a rival concern which Gurtler knew was going to attempt to resell the products to Unichem's regular customer base. In addition, even if we were to accept Gurtler's assertions regarding the sales to G.B. Gurtler, Gurtler has, nevertheless, failed to explain or justify his other acts and omissions set forth above. Accordingly, under these circumstances, we believe that no question of fact remains and that this case is the type properly disposed of through the summary judgment procedure.

## II

■ We next address Gurtler Chemicals' claim that the trial court erred in finding that Gurtler Chemicals violated the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 *et seq.*). It is Gurtler Chemicals' position that genuine issues of material fact still exist; specifically, whether the labels used by Unichem acquired secondary meaning in the mind of the public and whether there was actually a likelihood of confusion created by Gurtler Chemicals' labels.

To begin, the Uniform Deceptive Trade Practices Act provides in relevant part:

"Sec. 2. A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as

to the source, sponsorship, approval or certification of goods or services."
(Ill. Rev. Stat. 1983, ch. 121½, pars. 312(1), (2).)

In addition, the Uniform Deceptive Trade Practices Act states:

"In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." (Ill. Rev. Stat. 1983, ch. 121½, par. 312.)

We first note that "passing off" under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 312(1)) involves the deception of a consumer as to the source of a product. (*Robb Container Corp. v. Sho-me Co.* (N.D. Ill. 1983), 566 F. Supp. 1143, 1153; *Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 650, 303 N.E.2d 177.) Similarly, the conduct actionable under section 2(2) is that which causes a "likelihood of confusion as to affiliation, connection, or association with another." Ill. Ann. Stat., ch. 121½, par. 312, Illinois Notes, at 220 (Smith-Hurd Supp. 1986).

As Gurtler Chemicals correctly points out, the threshold issue in a case alleging a violation of the Uniform Deceptive Trade Practices Act is whether the plaintiff's product has acquired a secondary meaning. (*Filter Dynamics International, Inc. v. Astron Battery, Inc.* (1974), 19 Ill. App. 3d 299, 311 N.E.2d 386.) A product acquires a secondary meaning when the public comes to associate the trade dress of a product as being indicative of the source from which the product has come. (*Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 303 N.E.2d 177.) Uncontradicted proof of copying, together with visual comparisons showing similarity in use and appearance is sufficient to establish a secondary meaning. (*Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 647, 303 N.E.2d 177; *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.* (9th Cir. 1960), 283 F.2d 551, 558.) To this end, courts have recognized that the only logical reason for a defendant to copy the trade dress of a plaintiff's product is to attempt to capitalize upon a secondary meaning which the public already attaches to the plaintiff's product. See, *e.g., National Van Lines v. Dean* (9th Cir. 1956), 237 F.2d 688, 692.

■ Applying the above-stated principles to the case at bar, we are compelled, after comparing the labels used by Gurtler Chemicals and Unichem, to find that Unichem's evidence was sufficient to establish a secondary meaning. It is evident that Gurtler Chemicals simply copied Unichem's label. In this regard, we note that Gurtler Chemicals' label, or trade dress, is an exact copy of Unichem's label in the following ways: (1) both are the same size (9½ inches x 12½ inches);

(2) both have a two-tone colored bar on the left side of the label of approximately 3½ to 4 inches in width; (3) both have the same size (approximately 1¼ inches) logos of the respective corporations within a circle inside the two-tone colored bar; (4) both labels place the full name of the corporation underneath the aforementioned circle; (5) the printing used to identify the specific product being sold is the same in color (black), in form (block letters), and in size of the letters used (approximately 1 to 1¼ inches); (6) both labels identify the address of the respective businesses in the same place (in the lower half of the colored bar); (7) both list the net contents of the package with the same type of lettering in exactly the same place (upper right hand corner); and (8) both have colored bars of approximately one-fourth inch width running the length of the top and bottom of the label.

We believe that such similarities can lead to but one conclusion: Gurtler Chemicals copied the form and layout of Unichem's labels in an attempt to pass off its products as those of Unichem and thereby capitalize upon the secondary meaning which the public has attached to Unichem labels and products. (Accord, *National Van Lines, Inc. v. Dean* (9th Cir. 1956), 237 F.2d 688; *Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 647, 303 N.E.2d 177.) Thus, we find that the uncontradicted evidence, namely, the labels used by Unichem and Gurtler Chemicals, together with a visual comparison, sufficiently establishes that Unichem's labels have obtained a secondary meaning in the mind of the public.

■ With regard to the likelihood-of-confusion issue, we first note that Unichem is not required to prove that "actual" customer confusion has taken place. (Ill. Rev. Stat. 1983, ch. 121½, par. 312.) Instead, Unichem must establish that there existed a "likelihood" that Unichem customers were confused by Gurtler Chemicals' labels and did, therefore, purchase Gurtler Chemicals' products in the belief that they were actually Unichem's products. Ill. Ann. Stat., ch. 121½, par. 312, Illinois Notes, at 220 (Smith-Hurd Supp. 1986).

Upon reviewing the record, we believe that the evidence before the trial court was sufficient to establish a likelihood of confusion. As stated previously, 80% of Gurtler Chemicals' customers were former Unichem customers. In addition, the clear similarity between the labels used by Gurtler Chemicals and Unichem in itself suggests that customer confusion was inevitable. Under these circumstances, we believe that Unichem sufficiently established that Gurtler Chemicals, in copying the form and layout of Unichem's labels, created a likelihood of confusion.

Gurtler Chemicals, however, argues that a statement by Eugene

Korey, the current president of Unichem, absolutely precludes a finding of confusion and thereby bars Unichem from seeking recovery under the Uniform Deceptive Trade Practices Act. In his deposition, Korey stated: "They (the customers) know it's coming from Gurtler, and they know it's the same product that came from Unichem." In support of its theory, Gurtler Chemicals cites *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 425 N.E.2d 1174, and *Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Co.* (N.D. Ill. 1982), 553 F. Supp. 125.

Gurtler Chemicals misreads the *Hayna* and *Options Exchange* cases.

Both *Hayna* and *Options Exchange* were brought by customers as opposed to the business whose trade dress was being copied. Indeed, in both cases, the courts found that injunctive relief was not due the plaintiffs in light of the fact that the plaintiffs now knew the truth regarding the defendants' products and therefore could suffer no future damage as a result of the defendant's alleged deceptive practices. Accordingly, because the plaintiffs could suffer no future injury, injunctive relief pursuant to the Uniform Deceptive Trade Practices Act was unwarranted. See *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 712, 425 N.E.2d 1174, 1186; *Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Co.* (N.D. Ill. 1982), 553 F. Supp. 125, 129.

■ In the present case, on the other hand, injunctive relief is clearly appropriate, for regardless of Korey's statement, the bottom line is that Gurtler Chemicals copied Unichem's label for the single and obvious purpose of creating confusion among those customers who regularly purchased goods from Unichem. Consequently, unlike the customers in *Hayna* and *Options Exchange*, Unichem has suffered and will suffer future economic injury unless Gurtler Chemicals is prevented from using the form and substance of Unichem's labels as a means to lure Unichem customers away from Unichem. It is essential to note that the purpose behind the injunction in the present case is to ensure that customers who desire to purchase Unichem's products do not mistakenly purchase, because of an inability to discern the true source of that product, a Gurtler Chemicals' product believing it to be one manufactured by Unichem.

Furthermore, we believe the right to injunctive relief under these circumstances is well settled in Illinois law. Thus, as acknowledged by the parties, the Uniform Deceptive Trade Practices Act is merely a codification of Illinois common law. (*National Football League Properties, Inc. v. Consumer Enterprises, Inc.* (1975), 26 Ill. App. 3d 814,

327 N.E.2d 242.) For example, in the case of *Mossler v. Jacobs* (1896), 66 Ill. App. 571, the court set forth a general principle of law which we believe is as vibrant today as when it was first acknowledged. The *Mossler* court stated:

"No person is entitled to represent his wares as being the goods of another man, or articles of his manufacture as having been made by another, and no person is by the law permitted to use any mark, sign, symbol, name, device or other means, whereby he makes a false representation, or deceives as to his own goods, or as to the goods of another ***.

*** Fair competition in business is legitimate and promotes the public good, but an unfair appropriation of another's business by using his name or trade mark, or an imitation thereof calculated to deceive the public, is not permissible and will be enjoined by a court of equity." (66 Ill. App. 571, 574-75.)

We believe that Gurtler Chemicals' copying of Unichem's trade dress constitutes an "unfair appropriation" of Unichem's business "calculated to deceive the public." (*Mossler v. Jacobs* (1896), 66 Ill. App. 571, 574.) As such, Gurtler Chemicals' conduct is impermissible and was properly enjoined by the trial court.

### III

■ Gurtler Chemicals next claims that, even if Unichem is entitled to injunctive relief, nevertheless, an accounting (for the profits obtained by Gurtler Chemicals through the use of the copied labels discussed above) is a remedy which cannot be obtained pursuant to the Uniform Deceptive Trade Practices Act.

While Gurtler Chemicals may be correct regarding its interpretation of the remedies available under the Uniform Deceptive Trade Practices Act, we need not necessarily address that issue in light of our finding that the trial court granted Unichem an accounting, not for Gurtler Chemicals' breach of the Uniform Deceptive Trade Practices Act, but rather for Gurtler's breach of fiduciary duty. Indeed, in a motion for clarification (of the trial court's order granting summary judgment), the defendants specifically requested the trial court to "restrict the accounting to the sale of goods to former customers of plaintiff, since such sales are the only ones connected to defendant William Gurtler's alleged breach of fiduciary duty." Thus, the accounting was ordered for the breach of fiduciary duty rather than the violation of the Uniform Deceptive Trade Practices Act.

In *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1, the supreme court set forth the standard for assessing damages where a

breach of fiduciary duty has occurred. The *Vendo* court held that a plaintiff in a breach-of-fiduciary-duty case can obtain the difference between the profits it would have earned had there been no breach and the profits that were actually earned notwithstanding that breach. 58 Ill. 2d 289, 310, 321 N.E.2d 1, 11.

Applying that principle to the case at bar, we believe that the trial court correctly assessed the damages due Unichem as a result of Gurtler's breach of fiduciary duty. As set forth above, the evidence before the trial court indicates that Gurtler Chemicals obtained gross profits of $56,509.80 as a direct result of Gurtler's breach of fiduciary duty. The record further indicates that the trial court found that Unichem would have incurred $8,500 in operating costs in generating that amount of profits. The trial court then subtracted the operating costs from the gross profits to arrive at the final, net profit figure of $47,964.80. The trial court subsequently entered judgment in favor of Unichem for that amount. We believe that this figure properly comports with the standard set forth in the *Vendo* case, for it represents those profits Unichem would have received had Gurtler never breached his fiduciary duty.

██ Gurtler Chemicals claims, however, that the trial court erred in using the plaintiff's operating expenses as opposed to those actually incurred by the defendant. Although this position is theoretically correct (see, *e.g., Henry's Drive-In, Inc. v. Anderson* (1962), 37 Ill. App. 2d 113, 183 N.E.2d 889), we believe that, under the facts of the instant case, the trial court's use of $8,500 as representative of the operating expenses which would be incurred by Unichem was not unduly prejudicial to the rights of Gurtler Chemicals. We note, in this regard, that the trial court held 25 separate hearings over a period of two years on the accounting issue and that Gurtler Chemicals *never* introduced any evidence regarding the actual expenses which it incurred. Accordingly, we refuse to find that the trial court's apparent mistake constitutes reversible error.

IV

██ The last issue raised by Gurtler Chemicals involves the trial court's award of attorney fees. The trial court awarded Unichem $1,150.50 in attorney fees after the trial court found that Gurtler Chemicals wilfully violated the court's April 27, 1982, order. In that order, the court ordered Gurtler Chemicals to execute certain UCC financing and security agreements. On June 3, 1982, the trial court entered a rule to show cause. The trial court granted Gurtler Chemicals 14 days to show cause why they should not be held in contempt of

court for violating the court's April 27 order. On June 18, 1982, more than 14 days after the June 3 order, Gurtler Chemicals apprised the trial court that it had obtained financing arrangements satisfactory to both Unichem and the trial court. Also, on June 18, however, Unichem filed its petition requesting the trial court to award Unichem $1,150.50 representing those attorney fees which Unichem incurred in obtaining Gurtler Chemicals' compliance with the trial court's original April 27, 1982, order. The trial court granted Unichem's request.

We have reviewed the record and are unable to find that the trial court abused its discretion. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294.) Accordingly, the trial court's decision awarding Unichem $1,150.50 in attorney fees is affirmed.

In sum, for the reasons set forth above, we agree with the trial court that the evidence presented was sufficient to establish: (1) that Gurtler violated his fiduciary duty as a matter of law; (2) that Gurtler Chemicals violated the Uniform Deceptive Trade Practices Act as a matter of law; (3) that an accounting for the profits lost by Unichem as a result of Gurtler's breach of fiduciary duty was properly determined to be $47,964.80; and (4) that attorney fees of $1,150.50 were properly assessed against Gurtler Chemicals.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.