**DWYER, COSTELLO AND KNOX, P.C., Respondent,**

v.

**Mark DIAK, Appellant.**

**No. 60646.**

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 12, 1993.

J. Peter Schmitz, Heni Takacs, St. Louis, for appellant.

Jon M. Moyers, Timothy Francis Noelker, St. Louis, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

The plaintiff professional corporation sued a former officer, director and stockholder for "breach of fiduciary duty" in resigning his employment and entering into a competing business before the date on which he made his resignation effective. The circuit court awarded actual and punitive damages on a jury verdict and the defendant appeals. We conclude that the plaintiff failed to establish any damages other than those occasioned by privileged competition with a former employer, and reverse.

### 1. The Facts

We of course state the facts the jury could have found in support of the verdict and give the plaintiff the benefit of all reasonable inferences from the evidence. The plaintiff, however, has the burden of establishing every element of its claim by substantial evidence, and is bound by authenticated documentary evidence and by its own uncontradicted evidence, including evidence elicited from the defendant. *Gast v. Shell Oil Company*, 819 S.W.2d 367 (Mo. banc 1981); *Wendorff v. Missouri State Life Insurance Company*, 318 Mo. 363, 1 S.W.2d 99 (1927).

The plaintiff was incorporated in 1982 under the Illinois Professional Service Corporation Act, 32 Ill.Stats.Anno. ch. 32, §§ 415–1 to 415–17 (Smith–Hurd 1970), for the practice of the accounting profession. It is qualified as a foreign corporation under Missouri law and its principal office and place of business is in the City of Saint Louis. In accordance with the requirements of its governing statutes, all stockholders, officers and directors are Certified Public Accountants (CPA), qualified to practice their profession in Missouri. As of July 8, 1985, the stockholder-director-officers were Knox, Dwyer (a retired CPA) and the defendant. The corporation also employed two other CPAs, Jackson and Thoman, as well as accountants who were not CPAs. No employee of the corporation, CPA or otherwise, was bound by a contract, restricting competition with the plaintiff following termination of employment, and all were employees at will.

The defendant is a certified public accountant, licensed to practice in Missouri and Illinois. He was first employed by the plaintiff's predecessor in 1973. While so employed he passed the CPA examinations, after which he was assigned increased responsibilities, including the supervision of accounting work of clients whose principal CPAs at the firm had died or retired. He developed a specialty in the accounts of not-for-profit corporations, through study and practice. In 1983 the defendant made plans to leave plaintiff's service to accept employment with another accounting firm. To induce him to remain, the plaintiff's officer-directors offered him the opportunity to acquire stock and to become an officer and director. In this capacity he had the authority to sign the corporate name to audit reports. He would ordinarily be the principal supervisor of the accounting work of a particular client, as the head of an accounting team, and would not usually share the work of particular clients with other officer-directors.

On July 8, 1985, the defendant addressed a letter to Knox at the firm address reading in significant part as follows:

> I wish to inform you that I am resigning from Dwyer, Costello, and Knox, P.C. effective September 30, 1985. I have formed a partnership with Allen Jackson to provide CPA services to the general public. . . .

The September effective date is necessary because it is important that I complete certain audits in progress which cannot be timely completed in the best interest of the client unless personally completed by me. I will also service the administrative and other needs of any of those clients I have handled in the past as I deem necessary.

I believe reasonable compensation for my services during this winding up period will be a percentage of my 1985 annualized pay had I stayed with the firm (as previously agreed by us) determined by a proportion of those hours actually worked in relation to those hours I would have worked if I would not be resigning. I expect to spend between 20 and 30 hours per week performing the above mentioned services....

On July 11, 1985, Dwyer and Knox held a "directors' meeting" to which the defendant was not invited and which he did not attend. Pertinent portions of the minutes of this meeting read as follows:

A discussion took place concerning the resignation of stockholder and director, Mark Diak. It was unanimously agreed upon that Mr. Diak would be relieved as a director and officer of the corporation effective his resignation date.

A further discussion took place in regards to Mr. Diak starting his own business possibilities since it was heard that other firm employees were going with Mr. Diak, namely Mr. Jackson, Patty Thoman, and others.

It was decided to try to make this transition as smooth as possible. So long as both parties agreed, nothing of Dwyer, Costello and Knox would leave the office that belonged to the corporation. Discussion concerning Mr. Diak taking our clients was brought up and decided that he will have to pay us for them in the same manner that we paid Mrs. Costello.

(Mrs. Costello is the widow of a CPA who was an officer, director and shareholder of the plaintiff, and who had died several years earlier. The question of her entitlement is not further developed in the record.)

The defendant had begun preparations for his withdrawal in June of 1985. He agreed to enter into partnership with Jackson. When he advised Thoman of his intentions she said that she would resign also. She declined a partnership with the defendant and Jackson but agreed to enter the employment of the partnership. Other employees of the defendant who were not CPAs accepted offers of employment with the newly formed partnership after July 8. There is no evidence that Jackson, Thoman, or any other employee who resigned was delinquent in duties owed to the plaintiff or to the plaintiff's clients while remaining on its payroll.

The defendant also made preparations, prior to July 8, for setting up the partnership with Jackson. Office space was rented and stationery was printed. Over the weekend of July 3 and 4 he took files of persons who had been clients of the plaintiff to his new office. On July 8, apparently before Knox received the letter of resignation, the defendant advised a major client that he was leaving the plaintiff to form a new firm. There is no evidence that this client had any work under contract with the plaintiff at the time.

After July 8, the new partnership went into operation. The defendant continued with the work for clients under contract to the plaintiff, working part time at the plaintiff's place of business, while also doing work for the new firm's clients. He completed work for the plaintiff's clients prior to September 30, 1985. The plaintiff billed the clients for the services and paid the defendant for the hours expended, at the rate he had indicated. There is no evidence that the defendant received any other compensation from the plaintiff for services after July 8. The defendant sent notices to other clients he had served for plaintiff, indicating his willingness to do their accounting work. Many of these employed the new partnership. Jackson and Thoman also began work for the partnership, and numerous former clients of the plaintiff whom they had principally served switched their business to the new firm. Some employees of the plaintiff who had assisted the defendant, Jackson, and Tho-

man in doing its accounting work left the plaintiff's employ and accepted positions with the partnership. There is no evidence that the partnership undertook any accounting work which was under contract to the plaintiff on July 8, 1985.

It appears that Jackson, Thoman, and the defendant took possession of and made use of plaintiff's files on clients who switched their business. The files contained accounting work papers for completed work, which make accounting work for future years easier and less expensive. These files, so far as the record shows, were freely made available by the plaintiff's employees and there is no evidence of any unheeded demand for their return. Knox conceded that, when a client changes CPAs, it is the responsibility of the accountant who is being supplanted to provide the old work papers, or copies, to the new accountant. The work papers are of no value at all to an accountant who is no longer serving the client. There is no evidence that the plaintiff was disabled from or inconvenienced in serving any client who sought its services because the defendant or his colleagues had the work papers.

The firm of Jackson, Diak and Company lasted only until January 1, 1986, when Jackson withdrew. The defendant then rented space for himself and his employees in the plaintiff's suite. There was discussion of a reconciliation but this did not come about. In December of 1985 Knox and Dwyer advised the defendant that they expected compensation for former clients taken by the plaintiff, if no reconciliation were forthcoming. The defendant and his colleagues billed former clients of the plaintiff for $186,000.00 in fees during the year following the withdrawal, and for similar amounts in ensuing years. The jury awarded the plaintiff $50,000.00 actual damages and $100,000.00 in punitive damages. It found for the defendant on an additional count charging conversion of tangible property.

## 2. The Plaintiff's Theory

The plaintiff suggests that the case involves the fiduciary responsibilities of officers and directors of an Illinois corporation, and that the law of Illinois applies. It cites numerous decisions of the several Illinois district appellate courts which it deems controlling. The case also has a substantial Missouri nexus because it involves the practice of the closely regulated accounting profession in Missouri and the rights and duties of CPAs with respect to their clients. Professional corporations exist primarily for the economic benefit of the professionals, and the duty to the client must always prevail over any duty to the corporation. But there is no need to indite a treatise on conflict of laws, because our examination of the case law persuades us that there is no substantial difference between Missouri law and Illinois law in this area. The basic principles, rather, seem to be substantially the same for all American jurisdictions. See Restatement (2d) of Agency, Sec. 393 and comments.

The plaintiff seeks compensation from the defendant because some individuals and organizations that had relied on it for accounting services in past years entrusted their accounting business to the newly formed partnership after July 8, 1985. The essence of this theory is stated in the minutes of the directors' meeting of July 10, 1985, which read: "... Discussion concerning Mr. Diak taking our clients was brought up and decided that he will have to pay us for them in the same manner that we paid Mrs. Costello." The theory was also expressed in a colloquy between the plaintiff's counsel and the trial judge, as follows:

THE COURT: ... your theory is that your clients were deprived of income of accounting clients that were wrongfully taken by the defendant ...?

MR. MOYERS [Plaintiff's Counsel]: In a nutshell, yes....

This theory is expounded in a verdict directing instruction reading as follows:

### Instruction No. 9

Your verdict must be for the plaintiff if you believe that:

First, defendant was an officer or director of plaintiff, and

Second, while defendant was an officer and director he:

(a) Formed a rival accounting firm; or

(b) Asked accountants employed by plaintiff to join the rival accounting firm; or

(c) Solicited the business of plaintiff's clients; or

(d) Removed plaintiff's work papers for use at the rival accounting firm, and Third, plaintiff was thereby damaged.

■ A verdict directing instruction is erroneous if any required finding is contrary to law, or is not supported by the evidence. This instruction is necessarily erroneous if any one of the four disjunctive hypotheses of paragraph second is legally or factually insufficient. Were this not so, it would be impossible to tell whether the jury had based its verdict on a legally sufficient foundation. The reviewing court must be able to say, to a legal certainty, that liability ensues if the jury makes the findings detailed in the instruction.

We conclude that none of the four disjunctives in paragraph second is sufficient to support a verdict. The plaintiff must confront the established principle well stated in *Revcor, Inc. v. Fame, Inc.,* 85 Ill. App.2d 350, 228 N.E.2d 742, 746 (1967) as follows:

> Our free economy is based upon competition. One who works for another cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and the over-all experience which he acquired during the course of his employment.... Absent special circumstances, such person cannot be prevented from seeking out customers of his former employer when he has entered into a competing business or gone to work for a competitor.

Consistent are the following Illinois cases: *Ellis and Marshall Associates v. Marshall,* 16 Ill.App.3d 398, 306 N.E.2d 712 (1973); *James C. Wilborn and Sons, Inc. v. Heniff,* 95 Ill.App.2d 155, 237 N.E.2d 781 (1968); *Kalnitz v. Ion Exchange Products, Inc.,* 2 Ill.App.3d 158, 276 N.E.2d 60 (1971); *Radiac Abrasives, Inc. v. Diamond Technology, Inc.,* 177 Ill.App.3d 628, 126 Ill. Dec. 743, 532 N.E.2d 428 (1988). Also consistent are *Walter E. Zemitzsch, Inc. v. Harrison,* 712 S.W.2d 418 (Mo.App., E.D.

1986); *National Rejectors, Inc. v. Trieman,* 409 S.W.2d 1 (Mo. banc 1966); and Restatement (2d) of Agency Sec. 393, Comment (e).

■ So the plaintiff errs in assuming that it is entitled to compensation simply because some clients followed the defendant to his new firm and terminated their relationship with the plaintiff. These clients are not properly the subjects of bargain and sale among accountants who have served them in the past. The plaintiff is not helped by its evidence showing that accounting practices are sometimes sold, because the purchaser takes the risk that the clients will not continue with the organization. Clients are absolutely privileged to pick their own professional providers.

■ The first alternative of paragraph second of the verdict director predicates liability on a finding that the defendant, while an officer and director of plaintiff, "formed a competing business." Mere preparation to leave a business organization so as to enter into competition is not sufficient to support liability. *Radiac Abrasives, Inc. v. Diamond Technology Inc.,* 126 Ill.Dec. at 749, 532 N.E.2d at 434; *James C. Wilborn & Sons, Inc. v. Heniff,* 237 N.E.2d at 786; *C.G. Caster Co. v. Regan,* 88 Ill.App.3d 280, 43 Ill.Dec. 422, 425, 410 N.E.2d 422, 425 (1980). Thus such activities as renting office space, entering into a partnership agreement, or causing stationery to be printed, do not necessarily lead to a finding of liability. Paragraph (a) must fail because it would permit a verdict on the basis of the activities just detailed.

■ The second alternative, "ask[ing] accountants employed by plaintiff to join the rival accounting firm," is no more determinative of liability. *Ellis and Marshall Associates, Inc. v. Marshall,* 16 Ill.App.3d 398, 306 N.E.2d 712, 714–15 (1973); *United Aircraft Corp. v. Boreen,* 413 F.2d 694, 700 (3rd Cir.1969), holding that there is no wrong in making an offer of employment to an at-will employee even though the employee and his new employer may compete with the former employer; *Metal Lubricants Co. v. Engineered Lubricants Co.,* 411 F.2d 426, 429–30 (8th Cir.1969),

emphasizing the law's policy in favor of free competition, when no agreement provides otherwise. The employees of the firm, whether CPAs or not, were as free as the defendant to leave the plaintiff corporation's employ and to enter into competition. They could do so in association with the defendant, and the defendant could advise them of his decision to leave the plaintiff. If the plaintiff sensed the need to protect itself against competition from its accounting employees, it could have sought covenants restricting their competition, for which it would presumably have to offer some consideration.[1]

■ The general rule stated earlier demonstrates that the defendant is not liable for damages simply because he solicited the business of some of plaintiff's clients before the date on which he made his resignation effective. The evidence shows no such contact with clients before the defendant advised the plaintiff of his decision to resign and to enter into his own accounting practice, and then nothing beyond advice to the clients that the defendant was no longer affiliated with the plaintiff, coupled with a statement of willingness to serve their future accounting needs. There is no showing that the defendant approached any client before July 8, 1985, or that he sensed out the willingness of the clients to go with him before making a move. There is no showing that any client removed work already under contract with the plaintiff and placed the work with the defendant or his colleagues. Alternative (c) would permit recovery for lawful competition, and is therefore erroneous.

■ The inadequacies in the first three alternatives of paragraph second are not corrected by the circumstance that the defendant remained an officer and director of the plaintiff until September 30, 1985. The courts found no violation of duties to a former employer in *Ellis and Marshall Associates, Inc. v. Marshall*, 16 Ill.App.3d 398, 306 N.E.2d 712 (1973), or in *C.G. Cast-*

er Company v. Regan, 88 Ill.App.3d 280, 43 Ill.Dec. 422, 410 N.E.2d 422 (1980), even though the defendant was a director of the plaintiff at the time the activities complained of began. A director is free to terminate his tenure as such and to enter into a competing business, just as any other employee is. The defendant's directorship will not save instructions which are erroneous in that they would permit a verdict against defendant for conduct which he was privileged to engage in. Of this, more later.

■ The fourth alternative requires special discussion. There is evidence that the defendant removed some clients' files and work papers from plaintiff's place of business, but there is no showing that the plaintiff was denied access to these papers, or that it failed to retain any clients because the defendant and his colleagues had possession of the papers. The plaintiff would not be able to deny successor accountants access to the work papers if the clients decided to switch their business. The defendant points to RSMo § 326.100 (1986), providing that the ownership of "working papers" is vested in the CPA, rather than in the client. We do not have to decide whether the ownership is in the individual accountant or in the accounting firm under this statute because the plaintiff could not, in any event, use the papers so as to make a change in CPAs inconvenient for the client. Alternative (d) is insufficient because there is no showing that the defendant's possession of files and work papers caused damage to the plaintiff.

If any one of the alternatives of paragraph second is insufficient, a new trial is required. Inasmuch as all four are insufficient, the plaintiff has failed to supply a viable legal theory for recovery.

### 3. Disposition of the Case

We now inquire as to whether the evidence shows any viable theory, within the

---

1. *Perry v. Moran*, 109 Wash.2d 691, 748 P.2d 224, 227 (banc 1987) upholds such a covenant for an accounting practice. We do not have to decide whether this holding should be followed in Missouri, or whether the established rule that a covenant against competition by a lawyer is an unenforceable interference with the client's free choice of counsel which would be extended by analogy to CPAs. See *Dwyer v. Jung*, 137 N.J.Super. 135, 348 A.2d 208 (1975). Any holding of unenforceability would simply emphasize the client's freedom of selection.

pleadings, which might serve as the basis for recovery at a new trial.

Any theory of recovery predicated on the proposition that the plaintiff had a property interest in the continued business of its clients, so that the defendant could provide for their accounting needs only if he compensated the plaintiff, must fail. The clients have the privilege of selecting their own CPAs. *Roche Bros. v. Garrigan*, 88 Ill.App.3d 107, 43 Ill.Dec. 338, 341, 410 N.E.2d 338, 341 (1980); *Moss, Adams & Co. v. Shilling*, 179 Cal.App.3d 124, 224 Cal.Rptr. 456, 458–9 (1986). The defendant was free to leave the plaintiff's employment (there being no covenant against competition) and to provide accounting services to such former clients of the plaintiff as might choose him as their CPA. The uncontradicted evidence shows that the defendant completed all accounting work for which he was responsible to the plaintiff. The loss of plaintiff's expectancy that clients having no work in progress would return for regular accounting services does not support a damage award. The client has the privilege of following the withdrawing CPA, who may be the only one familiar with the work.

The plaintiff makes much of the circumstance that the defendant deferred his resignation from July 8 to September 30, and remained an officer and a director during that period. The bare circumstance of his holding an office and a directorship is not definitive. *C.G. Caster Company v. Regan*, 43 Ill.Dec. at 425–26, 410 N.E.2d at 425–26; *Ellis and Marshall Associates v. Marshall*, 306 N.E.2d at 716–17. The plaintiff must show that the defendant made an improper use of his directorship or office. The plaintiff accepted the defendant's tender of his services, billed the clients for the work done, and paid the defendant for the hours expended. There is no showing that he performed any other act in his capacity as director or officer between July 8 and September 30, or received any other compensation from the plaintiff. He was not notified of the rump directors meeting of July 10. The minutes show that the remaining directors knew that the other employees had left and that businesses and individuals who had been

the clients of the corporation had followed them. There is no showing of misrepresentation or concealment. There is, most important, no showing of a causal relationship between the defendant's status as officer and director and the plaintiff's loss of clients.

The plaintiff's citations do not indicate a different result. All involve conduct not shown by this record. In *Smith–Shrader Co., Inc. v. Smith*, 136 Ill.App.3d 571, 91 Ill.Dec. 1, 483 N.E.2d 283 (1985), the defendant solicited customers for his business while on a business trip for the plaintiff and sought to have suppliers breach their contracts with the plaintiff. In *Unichem Corporation v. Gurtler*, 148 Ill.App.3d 284, 101 Ill.Dec. 400, 498 N.E.2d 724 (1986), the defendant, while president and operating head of the plaintiff, gave active assistance to his son's new competing business and sold the plaintiff's product to this business at a discount so that it could resell it in competition with the plaintiff. In *Preferred Meal Systems, Inc. v. Guse*, 199 Ill.App.3d 710, 145 Ill.Dec. 736, 557 N.E.2d 506 (1990), one of the defendants, to the knowledge of the others, had entered into a covenant against competition. *ABC Trans. Etc. v. Aeronautics Forwarders, Inc.*, 62 Ill.App.3d 671, 20 Ill.Dec. 160, 379 N.E.2d 1228 (1978) presented a picture of activity over several months, including misrepresentations to employees, use of customer lists, and interference with contract relations. In *H. Vincent Allen & Associates, Inc. v. Weis*, 63 Ill.App.3d 285, 19 Ill.Dec. 893, 379 N.E.2d 765 (1978), the defendant solicited the principal customer of the plaintiff while he was actively employed by the plaintiff. Without necessarily endorsing the result of any particular case, or all that is said in the several opinions, we conclude that all are factually distinguishable. Several were decided on appeal from the granting or denial of a temporary injunction, and so different issues were analyzed. All demonstrate clandestine activities by the several defendants for their own benefit, while drawing compensation for full time employment with the plaintiff.

We do not commend the defendant for delaying his resignation as officer and director, but we perceive no proof that the plaintiff was damaged by his continuing in these offices. There is nothing in evidence to contradict the statement in the resignation letter that the defendant deferred his resignation for the plaintiff's benefit and for the benefit of the clients, pursuant to what he conceived his duty to be. There is no basis for inferring a contrary motive. Had the plaintiff perceived harm, the defendant could have been discharged from both positions; or the plaintiff might have precipitated the issue by seeking an injunction. When the damage remedy is sought, damages must be proved. *Mackey & Assoc. v. Russell & Axon Intern.*, 819 S.W.2d 49, 50 (Mo.App., E.D.1991), citing *Rigby Corporation v. Boatmen's Bank*, 713 S.W.2d 517 (Mo.App. 1986). We find no evidence of a causal relationship between the defendant's retention of his offices until September 30, 1985, and the decision of any client not to reemploy the plaintiff for future accounting services.

The plaintiff, indeed, fails to show that it lost any client for any reason other than the free choice of the client to use the services of the individual accountant who had done its work as an employee of the plaintiff, and who had continued practice elsewhere. The defendant testified on cross-examination that he had told one client, at a time not specified, that the name of the firm had been changed. This could be an actionable misrepresentation, if damages were shown. The defendant sought to amend this answer on redirect, suggesting that it was inadvertent, but, even if we hold him bound to it, the client's testimony supports no conclusion other than her decision to seek the defendant's individual services. Nor would the defendant's performance of accounting services for former clients of the plaintiff without advising them of the change in his professional affiliation support a conclusion that the plaintiff would have retained their business if the client had been informed of the change in the business relationship. There is, finally, no showing that the plaintiff sought to reclaim any lost business, except for one client who retained the defendant's firm and then returned to the plaintiff, which was the low bidder in a letting of bids for accounting work for a later period. There is no substantial evidence of any compensable damages.

In the view we take, we do not have to decide many of the issues briefed and argued, such as (1) whether the defendant was entitled to an estoppel instruction; (2) whether punitive damages were properly submitted; and (3) whether the evidence was unduly curtailed. Nor do we have to decide whether the same rules govern professional corporations as are applied to business corporations, respecting the privilege of an employee to resign and compete. On these points we express no opinion.

The judgment is reversed and the case is remanded with directions to enter judgment for the defendant.

GARY M. GAERTNER, P.J., and SMITH, J., concur.