In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 02-4001

FOODCOMM INTERNATIONAL,

*Plaintiff-Appellee,*

*v.*

PATRICK JAMES BARRY, et al.,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7268—**David H. Coar**, *Judge.*

---

ARGUED JANUARY 22, 2003—DECIDED JANUARY 23, 2003
OPINION PUBLISHED MAY 2, 2003

---

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Foodcomm International sought and received a preliminary injunction against its former employees, Patrick Barry and Christopher Leacy, and Outback Imports, Inc., the company Barry and Leacy formed with Empire Beef, Inc., Foodcomm's former customer. The preliminary injunction prohibits Barry and Leacy from providing any services to Outback or Empire. In an order dated January 23, 2003, we affirmed the district court's granting of the preliminary injunction; this opinion explains the basis for our earlier decision.

## I. BACKGROUND

Foodcomm is an importer of chilled Australian beef. Patrick Barry and Christopher Leacy were senior sales representatives at Foodcomm and oversaw its dealings with Empire Beef, one of Foodcomm's largest customers. Leacy and Barry were not executives with Foodcomm, but were two of Foodcomm's four highest-paid employees, and together had exclusive control over Foodcomm's purchasing and sales of Australian chilled beef.

In 2001, Empire approached Foodcomm with a business proposal to redistribute market fluctuation risk between the companies (the "redistribution deal"). Although both sides initially expressed interest in the arrangement, negotiations broke down following a meeting between Empire's Scott Brubaker and Foodcomm's Greg Bourke in March 2002. Leacy, who had been present at the meeting, asked Bourke to leave it to him (Leacy) to "smooth things over" with Empire. During this "smoothing over" process, Leacy learned from Brubaker how badly damaged the Foodcomm-Empire relationship had become when Brubaker informed Leacy that Empire would not conduct further business with Foodcomm. Leacy did not relay this information to anyone at Foodcomm, and Foodcomm's business with Empire dropped roughly 75 percent.

Meanwhile, Barry and Leacy's relationship with Foodcomm also took a downward turn. In May 2002, Barry and Leacy decided to "seek alternative employment together," and contacted Brubaker at Empire Beef to inquire whether it would be interested in their services. Brubaker requested a written business plan; Barry and Leacy used their Foodcomm computers and PDAs to prepare a business plan for a new company (Outback Imports) that would import Australian chilled beef for Empire. Barry and Leacy never informed Foodcomm about their plans with Empire and Outback, and Leacy con-

tinued to maintain to Foodcomm that he was "smoothing things over" with Empire.

Outback was incorporated in July 2002, but Barry and Leacy did not resign from Foodcomm until late August 2002. In September 2002, Outback began operating as a division of Empire with Barry and Leacy, now Empire employees, at its helm. Upon learning about Outback and its ownership by Empire and operation by Barry and Leacy, Foodcomm filed a complaint in district court seeking a preliminary injunction enjoining Barry and Leacy's continued employment with Empire and Outback. Following a four-day hearing, the district court made a preliminary finding that Barry and Leacy had usurped Foodcomm's corporate opportunity with respect to the redistribution agreement and had breached their fiduciary duties to Foodcomm when they approached Empire with a business plan and formed a company to compete against Foodcomm. The district court enjoined them from directly or indirectly providing services of any kind to or for Empire or Outback or any of their affiliates and agencies. Barry and Leacy brought an expedited appeal. Following oral argument, we affirmed the injunction in an unpublished order because, as we now explain, the district court did not abuse its discretion in granting the injunction.

## II. ANALYSIS

We review the grant of a preliminary injunction for an abuse of discretion. *Storck v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). To prevail on a motion for a preliminary injunction, Foodcomm must show that (1) its case has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Prometak Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002); *see also Abbott Labs. v. Mead Johnson & Co.*,

971 F.2d 6, 11 (7th Cir. 1992). If these three conditions are met, the court must balance the harm to Foodcomm if the injunction is not issued against the harm to Barry and Leacy if it is issued. *Storck*, 14 F.3d at 314. This balancing involves a sliding scale analysis: the greater Foodcomm's chances of success on the merits, the less strong a showing it must make that the balance of harm is in its favor. *Id.* Absent a clear error of fact or law, we defer to the district court's weighing of the relevant factors. *Abbott Labs.*, 971 F.2d at 13. The parties implicitly agree that Illinois law applies to Foodcomm's claims.

A.  Likelihood of Success on the Merits

The district court determined that Barry and Leacy's secret negotiations with Empire Beef to create Outback Imports were actions against the interests of Foodcomm and constituted a breach of Barry and Leacy's fiduciary duty of loyalty.[1] It is a fundamental principle of agency law that agents owe fiduciary duties of loyalty to their principals not to (1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which it was developed. *E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 993 (Ill. App. Ct. 1993); *Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993). Officers and directors have been found to have breached their fiduciary duties when, while still employed by the company, they (1) fail to inform the company that employees are forming a rival company or engaging in other fiduciary breaches,

---

[1]  The district court also found that Barry and Leacy's business plan usurped Foodcomm's corporate opportunity in the redistribution deal. We need not consider this issue, since we find that the preliminary injunction was properly supported by Foodcomm's breach of fiduciary duty theory.

*Unichem Corp. v. Gurtler*, 498 N.E.2d 724, 728 (Ill. App. Ct. 1986); (2) solicit the business of a single customer before leaving the company, *Smith-Shrader Co., Inc. v. Smith*, 483 N.E.2d 283, 290 (Ill. App. Ct. 1985); (3) use the company's facilities or equipment to assist them in developing their new business, *ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc.*, 379 N.E.2d 1228, 1238 (Ill. App. Ct. 1978); or (4) solicit fellow employees to join a rival business, *Unichem*, 498 N.E.2d at 728.

Barry and Leacy contend that since they were not titled as "officers" of Foodcomm, they do not owe fiduciary duties to Foodcomm. We disagree. Barry and Leacy were two of Foodcomm's highest paid employees, they were compensated based on the company's net profits, together they had exclusive charge over all of Foodcomm's purchasing of Australian chilled beef, and their job descriptions at Foodcomm involved significant autonomy and discretion. These are the hallmarks of a fiduciary, and employees, as agents of their employer, do not fall outside the purview of a breach of fiduciary duties. *Mullaney, Wells & Co. v. Savage*, 402 N.E.2d 574, 580 (Ill. 1980). "*Mullaney* . . . is a case in which defendant was neither an officer nor a director of the plaintiff corporation. Nevertheless, the defendant in *Mullaney* was found to owe a fiduciary duty to the corporation because there was an agency relationship." *Radiac Abrasives, Inc. v. Diamond Technology, Inc.*, 532 N.E.2d 428, 434 (Ill. App. Ct. 1988) (internal citation omitted).

In the present case, Leacy was privy to the collapse of negotiations between Foodcomm and Empire regarding the redistribution deal and offered to "smooth things over." The evidence adduced at the hearing supports the finding that instead of "smoothing things over," Leacy conspired with Barry to present Empire with a business plan to create an Empire-owned entity that would provide the same services as were already being provided by Foodcomm, and

directly compete with Foodcomm. Such efforts to actively exploit their positions within Foodcomm for their own personal benefits, and to hinder Foodcomm's ability to conduct its business with Empire, if proved at trial, constitute a breach of fiduciary duty. *Gregory*, 623 N.E.2d at 993. The evidence likewise supports a finding that Barry and Leacy also failed to inform Foodcomm of each other's plan to join Empire and form Outback, a rival company to Foodcomm; they solicited Empire's participation in their business plan while keeping their negotiations hidden from Foodcomm; and they used Foodcomm resources to draft and communicate the business plan to Empire. These actions, if proved at trial, also constitute breaches of their fiduciary duties. *Unichem*, 498 N.E.2d at 728; *Smith-Shrader*, 483 N.E.2d at 290; *ABC Trans-Nat'l Transport*, 379 N.E.2d at 1238.

B.  Inadequate Remedy and Irreparable Injury

To obtain a preliminary injunction, Foodcomm must show that it has no adequate remedy at law and, as a result, that it will suffer irreparable harm if the injunction is not issued. *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir. 1985). Inadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered. *Id.* The finding of irreparable harm to the plaintiff if the injunction is denied is a threshold requirement for granting a preliminary injunction. *Id.*

In this case, Foodcomm asserts that it has been and will continue to be irreparably injured by Barry and Leacy's actions, the most important injuries of which are its inability to attempt to maintain its relationship with Empire and its complete loss of that relationship. Because it is not practicable to calculate damages to remedy this kind of harm, no remedy at law can adequately com-

pensate Foodcomm for its injury. *Roland Machinery*, 749 F.2d at 386; *see also Cross Wood Products, Inc. v. Suter*, 422 N.E.2d 953, 957 (Ill. 1981); *Preferred Meal Systems, Inc. v. Guse*, 557 N.E.2d 506, 516-17 (Ill. Ct. App. 1990). Furthermore, Barry and Leacy have no significant assets in the United States and Outback is a start-up business with no assets. *See Roland Machinery*, 749 F.2d at 386. Because Foodcomm's irreparable harm was caused by and is maintained by Barry and Leacy's actions, an injunction is appropriate to prevent this harm from continuing.

## C. Balancing the Harms

In balancing the harms, the court must weigh the error of denying a preliminary injunction to the party who would win the case on the merits against the error of granting an injunction to the party who would lose. *Roland*, 749 F.2d at 387-88. In this case, the district court stated that the harm to Barry and Leacy from an injunction was that they could not work for Empire or Outback in the interim. Barry and Leacy argue that they also are irreparably harmed because the injunction jeopardizes their ability to earn a living and could subject them to deportation.[2] We disagree. The district court specifically stated they could work for another company in the industry and seek transfer of their visa status to that company. Therefore, they risked no irreparable injury with respect to their visa status and ability to earn a livelihood. Moreover, the district court was entitled to conclude that any irreparable harms were outweighed by the harm to Foodcomm in the form of its lost ability to maintain and pursue a relationship with Empire Beef, one of its major customers. *See*

---

[2] Barry and Leacy are Australian citizens who live and work in the United States under work visas.

*Roland Machinery*, 749 F.2d at 387; *Preferred Meal Systems*, 557 N.E.2d at 516-17.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of a preliminary injunction.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*